CULPEPPER, Judge.
On April 18, 1960, plaintiff filed this action against her husband for separation from bed and board on the grounds of *800 cruelty and incidentally prayed for custody of the two minor children, issue of her marriage to defendant, and for alimony pendente lite for the support of herself and said children.
In his answer the defendant denies the charges of cruelty and alleges that plaintiff abandoned him without cause. Defendant also alleges that plaintiff was at fault “because of her adulterous relationship with one Howard Boutte”. However, defendant did not in these proceedings file a reconventional demand for either divorce or separation.
After trial on the merits the lower court found plaintiff and defendant to be mutually and equally at fault and dismissed plaintiff’s suit for separation. From this judgment plaintiff has appealed suspensively.
Plaintiff’s chief complaints are that since their marriage in 193S her husband has been excessively jealous, has displayed a bad temper, has made false accusations against her, has threatened to beat her and on two occasions has actually struck her. The trial court found from the evidence, and we think correctly, that “the wife, there is no doubt, gave her husband cause for jealousy”.
The first specific incident of which plaintiff and her witnesses testified, in an effort to show the jealousy, bad temper and brutality of the defendant, occurred during about the year 1956 when plaintiff and defendant and several other couples were gathered on a Sunday afternoon in “Sue’s Drive-in” drinking and dancing. According to plaintiff and her witnesses, she started to dance with another man and defendant objected and shoved her down on the floor. Defendant testified that all he could remember about that particular incident was that they were all drinking and he had a fight with another man, but he denies either striking or shoving his wife. This incident had occurred three or four years before the date of the trial and the testimony of the witnesses about it was very vague and uncertain.
The next incident about which plaintiff and her witnesses testified, occurred in July of 1959 in “Meg’s Tavern”, a bar operated by plaintiff and defendant on the Abbeville Highway. On that occasion several couples were gathered in the bar drinking, and, according to plaintiff and her witnesses, the defendant accused plaintiff of “carrying on” with a man named Jimmie Rogers who was separated from his wife. Rogers and his wife were at this particular party, and according to the plaintiff, defendant told Mrs. Rogers that her husband had been “carrying on” with plaintiff. This caused Mrs. Rogers to become upset and leave. Plaintiff testified that after Mrs. Rogers left she said to defendant “You ought to be ashamed. Anytime you treat a lady as Jimmie Rogers treats me, you’d be a gentleman.” Plaintiff and her witnesses testified that then defendant slapped her and knocked her to the floor and every time she got up he knocked her back down. Defendant’s testimony about this occasion was that they were all drunk and Jimmie Rogers and his wife got into an argument and left at which time plaintiff stated to those present that Jimmie Rogers was a better gentleman than defendant. An argument ensued as to whether Jimmie Rogers was a better gentleman than defendant and finally defendant slapped his wife. Defendant testified that after he slapped her, she backed up and picked up a bottle and that he slapped her two or three times as she kept coming at him with the bottle.
Despite these incidents and other quarrels and arguments, plaintiff and defendant continued to live together until about January of 1960 a sequence of events started which culminated in their separation and the filing of this suit. It was in about January of 1960 that a man named Howard Boutte started frequenting the bar. Boutte was a “boyfriend” of plaintiff before she married defendant and there’s some evidence to indicate that actually they at one time had planned to be married. Boutte was separated from his wife and he went to Meg’s *801 Tavern almost every night during the first three months of 1960. Although plaintiff and Boutte deny it, there is evidence that in addition to drinking together, they frequently danced, held hands and “made love” in the bar and that some of these actions took place while the defendant was away during the day driving his school bus. Defendant testified that he knew Boutte was an old boyfriend of plaintiff’s and he obj ected to the attentions that Boutte paid to his wife, but to no avail. Finally, about April 1, 1960, an incident occurred which brought the matter to a head. The TV set belonging to plaintiff and defendant, and located in their home which adjoined the bar, was out of order and Mr. Boutte, who is actually a radio repairman, said he would take one of the TV tubes and see if it was causing the trouble. Boutte took the tube and returned with it the next day and then he and plaintiff went alone into the house to try to fix the TV set. Plaintiff and her witnesses testified that they were only in the house about twelve minutes, but defendant’s witnesses testified that it was a longer period of time. At any event, when defendant later heard of this incident he became very much upset. Defendant testified that he became even more aroused when he found a contraceptive device under the mattress in his bedroom at which time he asked the plaintiff “did you use it ?” An argument ensued. Plaintiff went to the hospital the next day, April 6, 1960, where she remained for two days. During her stay in the hospital she was visited by Mr. Boutte and by her husband. She left the hospital on April 8, but instead of going home she went to the home of her mother, despite the pleadings by defendant that she return home with him. On the night of April 8, plaintiff and defendant stayed at the home of her mother and slept in the same bed in a room also occupied by their two minor children. Defendant testified, but plaintiff denied, that they had marital relations on the night of April 8.
The testimony is conflicting, but it was either on April 9 or April 10 that defendant went to see plaintiff at her mother’s home and insisted that she return with him. On that occasion, the plaintiff testified, but defendant denied, that he threatened to “beat her up and put her back in the hospital if she and the children didn’t come back home to him.” However, plaintiff refused and on April 12 she left her mother’s home and moved to an apartment which she rented. Plaintiff testified that it was on April 13 that she finally decided to remain separate and apart from the defendant and this suit was filed on April 18, 1960.
The evidence shows, and plaintiff does not deny, that since their separation and the filing of this suit, Howard Boutte has visited plaintiff in her apartment several times a week, and that in addition they have gone together to various social functions. Although plaintiff’s minor son, Jesse James Miguez, testified that on several occasions he had seen his mother and Mr. Boutte hugging and kissing in the apartment and in Mr. Boutte’s car, both plaintiff and Boutte deny that they are anything but old friends.
Although there was other conflicting evidence about quarrels, accusations and “fussing” the above are apparently ' the principal items of evidence on which the lower court found mutual and equal fault. The trial judge in his written opinion held as follows:
“I think the preponderance of the evidence is to the effect that both parties were at fault and that their faults were equal. The wife, there’s no doubt, gave her husband cause for jealousy, and on the other hand, the husband went too far possibly with his threats. Yet, on the other hand, about the time that the cause for the alleged separation occurred, he took her to the hospital where she wanted to go and again took her to her mother’s home. And, apparently, the only basis for cruelty while the wife was at her mother’s home was the insistence *802 on the part of the husband that the wife return to her home. The wife gave good reasons for going to her mother’s home, thinking that she could rest ■better there than if she’s return to her own home which adjoined a bar. Taking the evidence as a whole, however, the insistence of the husband was to get his wife back to his home notwithstanding the fact that he felt he had been aggrieved by the actions of his wife.
“Under these circumstances, I feel that, as I have said before, that the parties were equally at fault and accordingly I will render judgment dismissing the suit at the plaintiff’s costs.”
The decision of the trial court is amply supported by the jurisprudence. In the case of Silva v. Miramon, 156 La. 360, 100 So. 528, 531, the factual situation was rather similar to the one at bar, except that there it was the husband who gave the wife cause for jealousy, and the court held as follows:
“And on the whole we therefore conclude, as did the district judge, that plaintiff’s demand should be rejected. Where a husband so behaves as to give his wife just ground for believing that he has abandoned her for another woman (as this plaintiff certainly has) he cannot complain that she should voice her indignation at his conduct and give vent to some feeling against him on that account; and her conduct on such occasion, being thus provoked by himself, cannot be assigned by him as ‘excesses, cruel treatment or outrages * * * of such a nature as to render their living together insupportable,’ and thus furnish grounds for a separation from bed and board under R.C.C. Art. 138. Let such a husband first mend his own ways, and when this is done, it will then be time to complain of his wife’s ‘ill treatment’ should she on her part not cease complaining; which, of course, she will under such circumstances.”
In the more recent case of Callahan v. Callais, 224 La. 901, 71 So.2d 320, 324, the court reviewed the jurisprudence on mutual and equal fault and held as follows:
“The philosophy of the rule herein-above; cited is applicable to the instant case for the reason that both parties are at fault, and it is difficult to determine which one of the spouses was guilty of the greater fault. Since both are mutually at fault, they should be left where their misconduct towards each other has placed them.”
Addressing ourselves now to the claim of plaintiff for alimony pendente lite, we find that on April 22, 1960, in these proceedings, the court rendered judgment on rule granting plaintiff alimony pendente lite in the sum of $200 per month for the maintenance and support of herself and two minor children beginning as of May 1, 1960. While these proceedings were still pending in the lower court the plaintiff filed two different rules against defendant for contempt for failure to pay alimony and defendant filed a rule for the reduction of alimony due to changed circumstances. The final result of these rules regarding alimony pendente lite was that on November 25, 1960, the lower court rendered judgment in favor of plaintiff and against defendant in the sum of $200 representing past due and unpaid alimony and reduced the alimony for future payments to $140 per month. Defendant has appealed sus-pensively from said judgment dated November 25, 1960, and we now have it before us for consideration.
In this court plaintiff seems to take the position that even though the defendant has appealed suspensively from said judgment of the lower court awarding plaintiff judgment for $200 for delinquent alimony and reducing the future alimony to $140 per month, she is still entitled to be paid $140 per month while this matter is pending on appeal. This argument has no merit. Even though it is true that the wife who suspensively appeals from a *803 judgment dismissing her suit for separation, or divorce is entitled to alimony pendente lite pending final decision on appeal (Brouilette v. Mallet, 180 La. 787, 157 So. 594) nevertheless, before the new Code of Civil Procedure, Art. 3943 went into effect on January 1, 1961, the jurisprudence of this State was settled that in separation and divorce proceedings a separate and sus-pensive appeal could be taken by the husband from a judgment awarding alimony pendente lite. In the case of Foret v. Gautreaux, 213 La. 1083, 36 So.2d 393, 394, the court held as follows:
“ ‘While this court has the power to modify and overrule its former decisions, it has never done so unless it appeared that error had been committed or that the rule announced therein was working hardships or injustices. In cases like the present one, it is true the wife may suffer some disadvantage in not receiving alimony during the pendency of the case on appeal, but if she is successful, she will receive the alimony awarded because the husband is required to furnish a solvent bond securing the payment thereof. On the other hand, if the husband is denied a suspensive appeal and is compelled to pay the wife alimony but eventually wins the case on appeal by showing that the wife is not entitled to such alimony, he will suffer a loss which cannot be recovered.’ ”
As to that portion of the lower court’s judgment ordering the husband to pay the wife $200, representing past due and unpaid alimony we find that our dismissal of the wife’s suit for separation necessarily extinguishes her incidental right to alimony pendente lite and this applies even to alimony in arrears. Lee v. Koester, 155 La. 756, 99 So. 588.
As regards plaintiff’s claim for attorney’s fees, the jurisprudence is well settled that if the wife is successful in her separation or divorce action, she is entitled to a judgment against the community for reasonable attorney’s fees, but if, on the other hand, she is not successful in the action, and the community of acquets and gains is not dissolved, the attorney for the wife is relegated to a cause of action for such fees against the husband, as head and master of the community, upon a quantum meruit for services rendered, it being a community obligation. See Parker, Seale & Kelton v. Messina, 214 La. 203, 36 So.2d 724 and the cases cited therein.
The final issue for determination is plaintiff’s contention that the lower court violated Article I, Section 6 of the La. Constitution, LSA-Const., which provides that “all courts shall be open”. The record reflects that on request of defendant, but without objection from plaintiff, the courtroom was cleared on two occasions for a few minutes during the introduction of testimony regarding contraceptive devices. The record shows that two teen-age sons of Ploward Boutte were in the audience and the court felt that it would be .unwholesome and improper for these boys to hear testimony concerning their father’s alleged relationship with plaintiff. After this line of testimony was concluded the spectators were permitted to re-enter the courtroom. In our opinion the trial court did not abuse its discretion in this regard. Furthermore, plaintiff did not obj ect at the time and cannot now be heard to contend that she has been prejudiced.
For the reasons assigned, that portion of the judgment of the trial court, of date, November 25, 1960, in favor of plaintiff for the sum of $200 delinquent and unpaid alimony, as well as that portion for future alimony pendente lite, is annulled and set aside. In all other respects the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendant, as head of the-community.
Amended and affirmed.