135 So.2d 283 (1961)
Florence GILBERT, Plaintiff-Appellant,
v.
Nolan HUTCHINSON, Defendant-Appellee.
No. 361.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1961.
*284 Dugas, Bertrand & Smith, by Frank Smith, Jr., Piccione & Piccione by Joseph J. Piccione, Lafayette, for plaintiff-appellant.
Fournet & Adams, by Robert J. Adams, DeBallion & Miller, by Charles DeBallion, Jr. and Roderick L. Miller, Lafayette, for defendant-appellee.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
The plaintiff wife's suit for separation from bed and board alleges certain acts of cruelty directed towards her by her husband, which made their living together insupportable. The defendant husband answered, denying plaintiff's allegations and also filing a reconventional demand for a separation, likewise alleging certain acts of cruelty perpetrated by his wife towards him. After trial on the merits the trial judge found both parties equally at fault in the matter and dismissed both the plaintiff's demand and the defendant's reconventional demand.
The plaintiff appeals from the judgment. Since the defendant did not appeal nor answer the appeal, the sole issue before us is whether the trial court erred in refusing to grant the plaintiff wife a separation from bed and board, under the evidence, on the alleged ground of cruel treatment.
The trial court's written opinion held that there is ample evidence in the record to support each party's allegations of cruel treatment by the other spouse but that, in each instance of cruel treatment as shown by the record, there is also evidence that the complaining spouse precipitated the other's conduct.
Under the Louisiana doctrine of comparative rectitude, when the faults of husband and wife are equally balanced and of a similar nature, a separation or divorce is denied for the assigned reason that the parties should be left where their mutual misconduct has placed them. Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591; Callahan v. Callais, 224 La. 901, 71 So.2d 320; Miguez v. Miguez, La.App. 3 Cir., 128 So. 2d 799. This doctrine has been criticized, and "It has been suggested that in cases of this nature, if the real issue is the advisability of continuing a personal relationship, mutual fault should increase rather than decrease the justification for granting a separation", Symposium, "Work of the Supreme Court", 15 La.L.Rev. 254 (1955), 268; but our Supreme Court has nevertheless reiterated the applicability of the doctrine in Louisiana, see Fouquier v. Fouquier, above-cited, reversing its original opinion granting a separation.
However, as the cited cases indicate, a separation will be denied on the ground of mutual fault only where the courts find as a fact that the degree of guilt has been comparatively equal and is of the same nature. Eals v. Swan, 221 La. 329, 59 So.2d 409; Hammonds v. Caballero, 207 La. 1090, 22 So.2d 660. This, we suppose, recognizes that rare indeed is marital discord in which both parties are not at least somewhat at fault, although the fault of one spouse may outweigh that of the other.
The present instance, unhappily, involves such a situation where neither party is free of fault which contributed to the eventual disruption of their marriage. The husband and the wife have been married since 1940 and have two children, a boy born in 1943 and a girl born in 1954. According to virtually all the testimony, up until five years before the trial in 1960, the family relations between the parties were happy and harmonious.
The evidence shows that, however, commencing about five years ago the parties *285 commenced to engage in repeated recriminations and arguments. The defendant husband complains that his wife would nag and easily lose her temper and, according to the allegations of his reconventional demand, she became indifferent and antagonistic towards him as well as others, including their minor son. The wife testified that, since about five years ago, the husband has repeatedly neglected and degraded her, criticizing the way she behaves and implying that she is unattractive, and that he refused to answer her questions and to engage in conversations with her concerning family affairs.
In June of 1959 the husband and wife slapped one another in the presence of their children, as the culmination of a weekend of arguing with one another. On July 14, 1959, the husband packed his clothes and personal papers and left the family residence and has never lived with his family since. When he left, (although he denies it) the preponderance of the evidence shows that he struck or shoved his wife, causing certain bruises to her person.
One factor, however, that apparently was not considered as excusing to some degree the wife's fault is that during much of this time she was mentally disturbed. She was under active treatment by a psychiatrist for three months in 1956, had to be placed in a mental sanatorium for ten days in 1957, and from time to time was forced to consult her psychiatrist or her family physician because of her mental condition. Her psychiatrist, who testified, diagnosed the cause of her mental condition as the marital discord in the home. (Incidentally, the medical testimony shows that her mental condition has calmed since her husband moved to a separate apartment.) Not called to the attention of our learned trial brother is the general rule that cruelties or indignities committed by one spouse are not cause for a divorce or separation when such conduct is due to a physical or mental condition, since the misconduct is considered excused to the extent that it was involuntarily induced by such mental or physical condition. See 27A C.J.S. Divorce Section 56(3) A, Note 58.5 p. 178, citing Evans v. Evans, 219 Ark. 325, 241 S.W.2d 713; Braun v. Braun, 186 Pa. Super. 260, 142 A.2d 361; Stinson v. Stinson, 163 Pa.Super. 497, 63 A.2d 413.
Following the husband's removal from the home, he commenced to date an attractive younger lady who managed a highway bar. A private detective who placed defendant husband under surveillance intermittently for several weeks, testified that on at least two occasions the husband and the young lady had been alone, in his apartment and in her home, late at night with lights darkened, for periods of from a half hour to an hour. The trial court, in not holding that adulterous misconduct was proved, apparently believed the testimony of the husband that the relationship was platonic, and accepted the testimony of members of the young lady's family that on such occasions the couple were not alone and that the drapes may have hidden the lights from the attention of an outside observer.
While we cannot say that there was manifest error in such latter conclusion, nevertheless, taking all the circumstances of this litigation into consideration, we think the trial court's conclusion was erroneous insofar as it held that because of equally balanced mutual fault the plaintiff wife is not entitled to a separation.
During the last five years or so of marital discord, the testimony shows that the plaintiff wife was troubled by deep emotional disturbances which arose at about the time the marital discord began. Whether in fact the wife's initial mental disturbance resulted because the husband became dissatisfied with the marriage, or whether instead the wife's mental disturbance caused the husband to become dissatisfied with the marriage, in either event, the husband has done little to aid or comfort his wife in solving their marital difficulties or to help her to cope with her mental condition.
*286 Both the plaintiff wife and her son, 17 years old at the time of the trial, testified that the defendant often called the plaintiff wife a "crazy woman", often in the presence of the children, and sometimes threatened to send her to the state mental institution at Pineville. He belittled her in front of the children, criticized her appearance and made fun of her womanly charms. Defendant conducted himself in this manner despite his knowledge of his wife's emotional disturbance concerning the marriage. Plaintiff on the other hand testified that she sought the advice of her priest and family doctor in an attempt to save the crumbling marriage.
We are not unmindful of the numerous verbal and sometimes physical battles in which these parties were involved, some in the presence of their children. We agree that most of these arguments were caused by the mutual fault of the litigants. But we cannot overlook the fact that marriage, being a human relationship, commands from the parties the greatest compassion and understanding. And when, as here, one of the parties is of distressed emotional balance and in need of greater than usual care and understanding from the other, we cannot say that such other spouse's retaliatory behavior in response to the emotional excesses of the other is excused by the behavior of the mentally disturbed spouse.
Having determined that defendant's fault contributed more than the wife's to the failure of this marriage, we must reverse the trial court's dismissal of the plaintiff's demand for a separation from bed and board.
The remaining questions concern the custody of the children, alimony, and the wife's attorney's fees.
The plaintiff is clearly entitled to the custody of her children. It is the settled jurisprudence that the welfare of the children is ordinarily best served when their custody is awarded to the mother; that she has the paramount right to their custody; and that the mother should be awarded custody of the children unless she is morally unfit or is incapable of taking suitable care of them. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532; Cannon v. Cannon, 225 La. 874, 74 So.2d 147; Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456. Aside from their marital disputes, both spouses have been excellent parents; since the husband has left the home, the wife has continued to provide a decent home for the children and to care for them as a good mother, and there is no allegation of any moral unfitness on her part.
The plaintiff is also entitled to alimony for the support of these children and of herself. The plaintiff produced proof that the monthly expenses for maintenance of herself and the children amounts to approximately $270.00, not including housing and clothing. The trial court had awarded alimony pendente lite at the amount of $225 per month, plus the use of the family residence in Lafayette. The evidence shows that the amount awarded for temporary alimony during the pendency of the proceedings has not been quite sufficient to pay for the necessities of the wife and children. The wife has no other income available to her except a monthly royalty of less than $20.00 which is alleged to be her separate property.
The husband owns a one-third interest in and is president of a family owned lumber company having assets valued at $58,334.79 at the trial. He is paid a monthly salary of $525, netting (less income and social security taxes withheld) $456.28 monthly; and he is allowed the use of a company-owned automobile. His bonuses each year prior to trial, paid from company profits, amounted to $1,000 annually. For the 1959 tax year, the last prior to the trial, he reported receiving rents and *287 royalties in excess of eleven thousand dollars (N.E., p. 7), including at least $105.00 per month from the rentals of community property.
Balancing the husband's ability to pay against the needs of the wife and children, we think that the husband should be required to pay alimony of $275 per month for the support of his wife and children: Schneider v. Schneider, La.App., 4 Cir., 129 So.2d 42; Harris v. Harris, La.App., 3 Cir., 127 So.2d 747, certiorari denied; Babineaux v. Viator, La.App., 3 Cir., 127 So.2d 204. In restricting the allowance of alimony to this amount, we are taking into consideration that upon dissolution of the community the wife will also receive in excess of fifty dollars per month, one-half of the rentals of community property, to aid her in maintaining the children, and we note the husband's previous generosity during the separation in matters of out of the ordinary medical expenses.
The wife is entitled to judgment against the husband, as head and master of the community, for attorney's fees incurred in the successful prosecution of the separation suit. Tanner v. Tanner, 229 La. 399, 86 So.2d 80; Giamanco v. Giamanco, La. App., 3 Cir., 131 So.2d 159; cf., Miguez v. Miguez, La.App., 128 So.2d 799, syllabus 5. The evidence shows that she actually incurred $500 attorneys' fees for the trial of this matter, which is the amount of the award requested for such item by the prayer of her petition. The evidence shows that such an attorney's fee is more than reasonable. We will therefore award judgment for $500 attorney's fees, per the prayer of the petition.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it dismissed the plaintiff wife's demand, and amended so as to render judgment in favor of the petitioner, Florence Gilbert Hutchinson, and against the defendant, Nolan Hutchinson, decreeing a separation from bed and board and dissolving the marital community formerly existing between them; awarding unto the petitioner the permanent care, custody and control of the minor children of the marriage, Mary Paula Hutchinson and Nolan Gilbert Hutchinson; and further awarding her alimony at the rate of Two Hundred Seventy-Five Dollars ($275) per month for her support and the support of the minor children, effective as of the date of finality of this decree. We further award judgment against the defendant, as head and master of the community, for her attorney's fees in the amount of Five Hundred Dollars ($500). The costs are assessed against the defendant-appellee.
Reversed and rendered.