YARRUT, Justice
(dissenting).
I am compelled to dissent from the majority opinion, because the evidence convinces me that the wife was entitled to a judgment on her reconventional demand or, at worst, both suits should have been dismissed on the ground of mutual fault, as was the conclusion of the District Judge, notwithstanding which he rendered judgment for the Plaintiff-husband instead of dismissing both suits.
The parties were married in 1937 and, at the time of suit, had a son 20 years of age (in the Army), and a daughter 18 years of age (in high school).
The husband alleged he was a kind and dutiful husband and gave his wife no cause for complaint, yet she was guilty of the following acts of cruelty:
1. Accused him of improperly kissing the wife of an “in-law” while they were dancing at a cocktail lounge;
2. Refused to have marital relations with him;
3. Refused to launder his clothes and prepare his meals, thereby compelling him to do so.
The wife first denied his allegations of cruelty, then alleged these acts of cruelty on his part in her reconventional demand:
1. Confessed to their daughter that he was having an affair with the wife of the “in-law,” and, if she told her mother, he would beat her; that their daughter told her of this confession, whereupon he brutally beat their daughter in her presence, requiring medical treatment for their daughter;
2. After she confronted him with his flirtation with the other woman, he refused to support her and their daughter, denying them food and money; and continued his *836 daily visits with the other woman; and, on occasions, remained away from home overnight with no explanation; all of which made living with him unbearable, for which reasons she, and not he, is entitled to judgment of separation.
In January 1960, Plaintiff and Defendant (referred to herein collectively as the Chaissons), with their daughter and a girl friend, attended a night club with the “other woman” and her husband, as they had frequently done for over a decade. The daughter and Plaintiff’s brother (a bartender employed at the lounge) testified that, while Plaintiff and the “other woman” were dancing, they were observed kissing. When the daughter confronted the “other woman” in private with what she had seen, the latter denied it, and immediately offered to talk to Defendant about the incident. The daughter demurred as she did not want to upset her mother. The “other woman” then told her husband, who also wanted to speak to Defendant but, when told of the daughter’s attitude, decided to “let it ride.” Defendant was told of the incident for the first time in August 1960 by their daughter in Plaintiff’s presence, following which he struck his daughter as related above. Constant quarrels between the Chaissons followed the incident.
Defendant repeatedly urged Plaintiff to stay away from the other couple, which he refused to do, saying there was nothing between him and the “other woman.” Defendant admitted accusing Plaintiff of infidelity, which he persistently denied; and testified he began remaining away from home for hours at a time; refused to give her money or food, and threatened to starve her and their daughter. Plaintiff left home after Defendant charged him with non-support and obtained an alimony decree of $35.00 monthly in the Juvenile Court.
Plaintiff testified his wife refused to cook or launder for him; kept accusing him of affairs with the “other woman;” that he was still friendly with the "other woman” and her husband, and saw nothing wrong in visiting them, but insisted he was never alone with her; that his unfriendly sister-in-law kept prodding his wife about the “other woman,” and tried to “run” his life; and finally, when living at home became intolerable, he left and went to a boarding house near his place of employment.
The husband of the “other woman” testified to the fidelity of his wife, who admitted Plaintiff had taken her shopping, but had never been alone with her.
What strikes me as very significant is that Plaintiff persistently denied he kissed the “other woman” when dancing, yet when his daughter and wife insisted he had, he replied to the effect that, “since you insist I did, then I did.” If his kissing was harmless and had no suspicious implications, why did he insistently deny it? His own brother testified he saw him do it.
Plaintiff and his daughter shared the finest filial relationship prior to the incidents resulting in her parents’ estrangement, and she could have had no reason to testify against her father except the sad duty of telling the truth under oath when called as a witness.
The Trial Judge’s reaction to the testimony was:
“ * * * it appears to me that there is considerable fault in the reactions of both of these people, and instead of each attempting to compromise and adjust themselves to a situation in which they find themselves, that each party to the marriage took it upon themselves to say that they would hew to a particular line and would not give in, come what may. And of course, ‘What may come’ was OBVIOUS, and DID come; and it seems to me that such a long life together should be destroyed, — destroyed by plain hardheadedness on each side.”
*837 The testimony of the 18-year old daughter as to the conduct of her father tilted the scale in. favor of her mother. To disregard her testimony the Court would have to conclude that she was guilty of dishonoring her father and bearing false witness against him. The majority opinion seems to conclude that the wife’s sole complaint is predicated on the one occasion when her husband kissed the “other woman.” Admittedly, this one incident would not be a justifiable ground for suspicion or a charge of cruelty, but considering the husband’s persistent attention to the “other woman,” accompanying her on occasions when shopping, unnecessarily remaining away from home for hours at a time, and sometimes nearly all night, without explanation, and his refusal to provide his family with food, clothes or funds to maintain the household, cannot be ignored. This situation has been aptly epitomized by our Supreme Court in the case of Silva v. Miramon, 156 La. 360, 100 So. 528, in which the Court said:
“And on the whole we therefore conclude, as did the district judge, that plaintiff’s demand should be rejected. Where a husband so behaves as to give his wife just ground for believing that he has abandoned her for another woman (as this plaintiff certainly has), he cannot complain that she should voice her indignation at his conduct and give vent to some feeling against him on that account; and her conduct on such occasion, being thus provoked by himself, cannot be assigned by him as ‘excesses, cruel treatment, or outrages * * * of such a nature as to render their living together insupportable,’ and thus furnish grounds for a separation from bed and board under R.C.C. art. 138. Let such a husband first mend his own ways, and when this is done, it will then be time to complain of his wife’s ‘ill treatment’ should she on her part not cease complaining; which of course, she will under such circumstances.”
While it is well-settled that findings of fact of the District Court, unless manifestly erroneous, should not be disturbed on appeal, this rule does not apply to a misapplication of the law applicable to such facts. Since the finding by the District Court is clearly that of mutual fault and comparative rectitude, the worst the wife should suffer is a dismissal of her suit along with that of her husband. Eals v. Swan, 221 La. 329, 59 So.2d 409, and cases therein cited; Miguez v. Miguez, La.App., 128 So.2d 799.
It is .my opinion that the judgment of the District Court should be reversed and judgment rendered in favor of the wife, with the dismissal of the husband’s suit; or, in the alternative, both suits should be dismissed, as in the case of mutual fault and comparative rectitude.