# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1372

JOHN H. PUCHEU

VERSUS

MAXINE GUIDRY PUCHEU

************

**APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 02–C-1721
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE**

************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of John D. Saunders, Oswald A. Decuir, Jimmie C. Peters, Michael G. Sullivan and James T. Genovese, Judges.

SAUNDERS, J., CONCURS.

DECUIR, J., DISSENTS AND ASSIGNS REASONS.

REVERSED.

Anne E. Watson
232 N. Liberty Street
Opelousas, Louisiana 70570
COUNSEL FOR PLAINTIFF/APPELLANT:
    John H. Pucheu

J. Ogden Middleton, II
1412 Centre Court, Suite 403
Alexandria, Louisiana 71301
COUNSEL FOR DEFENDANT/APPELLEE:
    Maxine Guidry Pucheu

**GENOVESE, JUDGE.**

This appeal presents the question of whether mental illness was sufficiently proven so as to excuse the fault of the wife in the break up of the marriage for purposes of final periodic support. The trial court found that the wife was excused from fault and awarded $2,000.00 per month in final periodic support. For the following reasons, we reverse.

## FACTS

John Pucheu ("John") and Maxine Guidry Pucheu ("Maxine") were married on December 9, 1988, separated January 9, 2000, and divorced on August 14, 2002. Prior to their marriage, Maxine was employed by the Louisiana Legislature and John was practicing law in Eunice, Louisiana. Upon marrying, Maxine left her job and moved to the Pucheu family home in Eunice. Maxine had no prior children. John had three children from a previous marriage. The couple had no children together, but raised John's three children, who are now adults.

Following a four-day trial on the issues of fault and final periodic support, the trial court found that Maxine's behavior during the marriage constituted fault which led to the dissolution of the marriage. However, the trial court held that Maxine's fault was excused due to her pre-existing mental illness and awarded her final periodic support in the amount of $2,000.00 per month. John appeals.

## ISSUE

The issue presented is whether the trial court erred in finding that Maxine Guidry Pucheu's mental illness excused her from fault thereby entitling her to final periodic support.

## LAW AND DISCUSSION

Louisiana Civil Code article 111 provides that a court "may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage."

In the present case, the trial court found that Maxine's behavior during the marriage constituted fault which led to the dissolution of the marriage. We agree with the following factual findings of the trial court which are well supported by the evidence in the record:

> It is the factual finding of this Court that Mrs. Pucheu's actions as proven by Mr. Pucheu include, but are not limited to, her refusal to participate in family activities, including all of the daily activities of dining together and care of the minor children, failure to properly communicate to her spouse and children, failure to perform household chores, isolation of herself from other members of the immediate family, cruel treatment, and outrages. When these instances of misconduct are combined with each other it is this Court's factual finding that they rose to the level of fault and led to the ultimate dissolution of the marriage.

Even though the trial court found that Maxine was at fault in the break up of the marriage, the trial court went on to state that the "behavior which constituted fault in the dissolution of the marriage was involuntarily induced over an extended period of time by her preexisting mental illness and excuses her of the same." In reaching this conclusion, the trial court relied upon *Credeur v. Lalonde,* 511 So.2d 65 (La.App. 3 Cir.), *writ denied*, 513 So.2d 822 (La.1987) which states as follows:

> This Court further finds that the length of treatment and mental illness documentation presented is more than sufficient to allow this Court to form a reasonable factual basis of the reason for her conduct. Furthermore, particular medical expert testimony is not required for each instance of misconduct at each particular junction of her illness including symptoms which arose to the level of misconduct that constituted fault in the marriage's dissolution when such a reasonable factual basis for their cause exists.

However, this court finds that the trial court erred as a matter of law by misinterpreting and misapplying *Credeur* and the prior jurisprudence on mental illness as it relates to fault, or an excuse therefor, in the breakup of a marriage.

Relying on *Credeur*, the trial court reasoned that Maxine did not have to establish by medical evidence that all of her acts constituting fault were caused by her mental illness. This is a mistatement and misapplication of our holding in *Credeur*.

In *Credeur*, unlike the matter before us, this court was faced with examining only one assertion of fault based on abandonment. The evidentiary issue in *Credeur* arose when a spouse had been diagnosed with a schizophrenic disorder in February of 1984, and did not abandon the matrimonial domicile until August of 1984, some five months later. This court simply stated that the reasons given by the spouse for abandoning the matrimonial domicile were consistent with the diagnosed mental illness disorder, i.e., fear that her husband and daughter were going to do her bodily harm, and that a reasonable fact finder could conclude that there was a causal connection. In contrast, with Maxine, the medical witnesses were not clear concerning which actions were caused by her mental condition and which were not. Dr. Krishna Yalamanchili, Maxine's treating psychiatrist for over twenty years, was unable to state with any degree of medical certainty or probability that Maxine's mental illness was the cause of all of her behavior constituting fault. Thus, we find as a matter of law, the trial court applied the wrong standard to the facts in evidence, and the error of law removes it from a manifest error analysis by this court.

When the court of appeal finds that a reversible error of law or manifest error of material fact was made, it is obligated to conduct a *de novo* review of the entire record and render a judgment on the merits wherever possible. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.)

The record in this case reveals that Maxine had underlying emotional problems. However, the factual and medical evidence established long periods between documented medical treatment. Her first hospitalization occurred in 1982, six years before her marriage to John. At this time, Maxine was diagnosed with anxiety disorder and hysterical personality disorder. Despite her illness, she successfully

3

worked at the Louisiana Legislature for eight years and continued to work there until the marriage. The next hospitalization did not occur until 1996, eight years after the marriage, when she was hospitalized for a personality disorder. Thereafter, she was not hospitalized again until 2001, which was one year after the parties separated for the last time. The diagnosis on this occasion was a major depressive disorder and unspecified personality disorder.

The record reveals that Maxine engaged in a variety of behavior. In addition to publicly criticizing her husband and refusing to participate with him in public events, Maxine did not cook, clean house, iron, or maintain any marital sexual relationship. She also exhibited bizarre behavior such as spending most of her time locked in her bedroom with her dog, maintaining the bedroom in such a manner that only the dog felt welcome, starting construction projects in the middle of the night, playing the television intolerably loud so as to alienate everyone in the house, engaging in screaming tantrums, cursing her husband, throwing objects, insisting that he make more money to maintain her required lifestyle, and requiring him to run errands for her during work hours. These were only some examples of her bizarre behavior and activities.

Although there was sufficient proof in the record of mental illness to excuse much of her bizarre and erratic behavior, there was likewise behavior constituting independent fault not proven with any degree of medical certainty to be caused by her specific mental condition. There were periods of remission where the fault inexplicably continued. The mere proof of mental illness does not excuse all fault. In the case at bar, there were numerous incidents and behavior constituting fault which were not proven by a preponderance of the medial evidence to have been caused or excused by the wife's mental illness. A review of the jurisprudence on this

4

issue supports this court's conclusion, that for behavior constituting fault to be excused for purposes of final periodic support, the spouse must establish that each act constituting fault was caused by mental illness.

In *Gilbert v. Hutchinson*, 135 So.2d 283 (La.App. 3 Cir 1961), the issue was "whether the trial court erred in refusing to grant the plaintiff wife a separation from bed and board, under the evidence, on the alleged ground of cruel treatment." *Id*. at 284. Applying the law on separation as it existed at that time, this court noted "the general rule that cruelties or indignities committed by one spouse are not cause for a divorce or separation when such conduct is due to a physical or mental condition, since the misconduct is considered excused **to the extent that** it was involuntarily induced by such mental or physical condition." *Id*. at 285(emphasis added). This language was later relied upon in *Courville v. Courville*, 363 So.2d 954 (La.App. 3 Cir. 1978), *writ denied*, 365 So.2d 243 (La.1978). Again applying the law regarding living separate and apart, this court, in *Courville*, wrote:

> The trial court found that the wife's actions toward her husband were sufficient to constitute cruel treatment. However, the trial court also held:
>
>> "Because of her mental condition at the time of the separation, I find that Mrs. Courville cannot be found at fault in causing the separation, as her condition is considered excused under our law **to the extent that** it was involuntarily induced by such mental condition"

*Id.* at 956 (emphasis added).

The distinction of the holdings of *Gilbert* and *Courville* from the trial court's interpretation of *Credeur* is the limiting language. *Courville* does not stand for the proposition that proof of mental illness by a spouse seeking final periodic support excuses, without limitation, that spouse from actions constituting fault. Rather, the jurisprudence has recognized that mental illness of a spouse, if proven, excuses those

5

actions which constitute fault in the break up of a marriage **to the extent that** each act of fault was caused or involuntarily induced by the mental condition.

In the case of Maxine, the experts were significantly vague on what fault issues were caused by her mental condition and those issues that were simply unpardonable fault on her part. The trial judge reasoned that the medical evidence established that some of her actions were excused because of her mental condition, but those which were not so clearly identifiable would be included with her other behavior based on the holding of *Credeur*. This court has conducted a *de novo* review of the record and finds that none of the medical professionals testifying at trial stated that Maxine's mental problems caused her to do all of the things that she did. The experts simply stated that some of her actions might be expected if she did not follow the recommended treatment program.

The mental illness exception excusing fault was jurisprudentially established to protect a spouse suffering from a condition that renders the spouse's actions impossible to control. *Credeur* is an example of such a situation given the wife's schizophrenic disorder. However, a mental condition, especially one that results in intermittent flare-ups, with periodic remission, does not excuse all behavior constituting fault. If so, an individual who marries someone with a mental condition would be responsible for the support of that person no matter what actions are undertaken by that person and regardless of whether the actions go beyond the realm of the condition from which the person suffers. Such is not the intent of the mental illness exception.

The trial court in this matter worked hard to reach a fair resolution of the issues in a difficult case. This court agrees with the trial court that Maxine's behavior during the marriage constituted fault which led to the dissolution of the marriage. We

6

also agree that Maxine suffers from a mental illness. However, having reviewed the record in its entirety, we find that Maxine failed in her burden of proving that each of her actions constituting fault were involuntarily induced by her mental condition thereby excusing her fault by law. For the foregoing reasons, we reverse the trial court's judgment excusing Maxine from fault due to her mental illness and awarding her final periodic support. Costs of this appeal are assessed to Maxine Guidry Pucheu.

**REVERSED**.

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-1372

JOHN H. PUCHEU

VERSUS

MAXINE GUIDRY PUCHEU

**DECUIR, J., dissenting.**

In reversing this fact intensive domestic dispute over the effects of mental illness on the dissolution of the marriage, the majority abandons the manifest error standard of review which governs this case. Accordingly, I dissent, finding the majority substitutes its own opinion for that of the fact finder and misinterprets jurisprudence pertinent to this case.

The majority characterizes the trial court's reasoning as legal error and finds the trial court's reliance on *Credeur v. Lalonde,* 511 So.2d 65 (La.App.3 Cir.), *writ denied,* 513 So.2d 822 (La.1987) is misplaced. Contrary to the majority's holding, however, I believe the trial court's ruling was correct and well-supported by the *Credeur* decision. The wife in *Credeur* sought to be excused from fault in abandoning the matrimonial domicile based on a previous diagnosis of schizophrenia, which the medical evidence showed was in remission three months prior to the abandonment. Notwithstanding the fact that the wife's medical condition on the date of abandonment could not be proved, the court nevertheless found that her mental illness excused her conduct. The court explained:

> Although Dr. Dupree testified that he had no way of knowing what defendant's mental condition was as of that date, we note that **medical expert testimony is not necessary for a finding of mental incapacity sufficient to excuse a spouse from fault**. *Gipson v. Gipson,* 379 So.2d 1171 (La.App. 2 Cir.), *writ denied,* 383 So.2d 799 (La.1980).

(Emphasis added.) *Id.* at 67. The trial court in the instant case relied on proof of a reasonable factual basis indicating a causal connection between Maxine's behavior and the dissolution of the marriage. Similarly, the *Creduer* court found a "reasonable factual basis" to be sufficient proof:

> Under these circumstances, there was a reasonable factual basis upon which the trial court could have concluded that defendant was, on August 27, 1984, suffering from a mental illness and that her mental illness contributed to or was the cause of her abandonment. Absent manifest error, findings of the trial court will not be disturbed on appeal. *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978).

*Id.*

In the recent case of *Gremillion v. Gremillion,* 39,588, p.17 (La.App. 2 Cir. 4/6/05), _____So.2d_____, the court reiterated the rule that findings of fact "on the issue of fault will not be disturbed unless manifestly erroneous." There, the wife's behavior was described as irritable, emotional, and argumentative following brain surgery to remove a subdural hematoma. She had a history of bipolar disorder and depression, and her symptoms were exacerbated by the surgery. The trial court refused to attribute fault to her; rather, he found the husband's failure to accompany her when she was put out of her daughter's house constituted mental cruelty and constructive abandonment. In affirming the judgment of the trial court, the second circuit noted:

> [T]o place legal blame or fault on Mrs. Gremillion, which in fact is a legal judgment of *moral* responsibility for ending the marriage, would be inappropriate. Indeed it is questionable whether an individual suffering from mental illness can be blameworthy or at "fault" for the dissolution of a marriage where it is the symptomatic behavior of the mental disease that caused the dissolution. . . . This would be tantamount to placing moral blame on an insane individual for acts attributable to his insanity and over which he had no control.

*Id.,* p. 18-19.

2

In my view, the trial court properly interpreted the *Credeur* case and its reliance on that opinion was appropriate. Accordingly, I would adhere to the supreme court's most recent pronouncement on the manifest error/clearly wrong standard of review in *Driscoll v. Stucker*, 04-0589 (La. 1/19/05), 893 So.2d 32, which I believe governs this case:

> In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Assn,* 2002-2660 (La. 6/27/03),851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Id.* The reviewing court should affirm the district court where the district court judgment is not clearly wrong or manifestly erroneous. *Id.*, 851 So.2d at 1023.

> One of the basic tenets of the manifest error standard of review is that "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently." *Parish Nat. Bank v. Ott,* 2002-1562 (La. 2/25/03), 841 So.2d 749, 753. This principle is further explained in *Ott* as follows:

>> This court has announced a two-part test for the reversal of the factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one.... The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.

04-0589, at p. 10.

The facts in the record show that Maxine has regularly received psychiatric care since at least 1982, which care has included three hospitalizations. Her treating

psychiatrist for more than twenty years testified at trial, as did a psychologist who treated Maxine for several years. John himself was actively involved in Maxine's psychiatric care, transporting her to Baton Rouge for appointments and discussing her sessions and medications with the doctors. Through the years, Maxine was diagnosed with both Axis I and Axis II mental illnesses as described in the DSM-IV: anxiety disorder, hysterical personality disorder, depressive disorder, and an unspecified personality disorder. Pursuant to Axis III and Axis IV, physical ailments such as ulcers and chronic back pain were present and social and marital stressors were noted. Additionally, Maxine received low scores on functioning assessment tests with regard to Axis V. The trial court determined that Maxine's medical history and mental conditions form a reasonable factual basis to explain or excuse her conduct.

I believe a reasonable factual basis exists for the finding of the trial court and see no manifest error in its judgment. The trial court's conclusions are well supported by the evidence. Maxine's psychiatric history shows a longstanding disorder which directly affected the marriage and ultimately caused its failure. Her disorder was characterized by poor judgment, hysteria, depression, and social and marital stress. The testimony presented by both sides depict Maxine as a very troubled and emotional person. These symptoms culminated in and caused Maxine's behavior and ended her relationship with her husband. Medical evidence directly linking each act of fault with Maxine's diagnosis is unnecessary when the record so clearly depicts a woman whose disorders took over the household.

The majority, however, holds Maxine to an impossible burden. That she, as a mentally ill, depressed and anxious wife, with at times minimal functioning capabilities, could provide psychological evidence regarding each and every act of misbehavior, as described by her husband and over the course of a twelve-year

4

marriage, is preposterous.  Tellingly, the majority is unable to describe, and not even once hint at, which behaviors might not be excusable and which are.  How then could Maxine?  That, of course, is the province of the trial court and the rationale of *Credeur*.

Because I find no manifest error in the conclusion that Maxine met her burden of proving a causal connection between her mental illness and her fault in causing the failure of the marriage, I respectfully dissent from the reversal of the trial court's judgment.