MOISE, Justice.
 

 Pierre L. Callahan sued his wife, Leoncia Calíais, for a separation from bed and board on the ground of abandonment. In his petition, he sets forth that his wife left the marital domicile on June 19, 1952, and at the time of filing suit had not returned. He also prayed for a partition of the community of acquets and gains.
 

 ' Defendant, Leoncia Calíais, denied the allegations of plaintiff’s petition, averring that she did not abandon the marital domicile but went to California to visit' her daughter at the advice of her physician who suggested a complete change of1 surroundings and atmosphere. She reconvened; alleging cruel treatment which rendered her living with her husband insupportable and prayed for a separation “a menso et thoro.” - She also prayed for a partition. of the community, attorney’s fees and permanent alimony.
 

 On second trial, the .district court rendered judgment in favor of the plaintiff husband, awarding him a separation from, bed and board on the ground that his wife did not have sufficient cause to leave the marital domicile on June 19, 1952 and therefore abandoned him. The judgment-further awarded $350 as attorney’s- fees to counsel for Mrs. Callahan. By separate judgment, the defendant was given alimony of $27 per week.
 

 Defendant, plaintiff in reconvention, appealed from the judgment, and plaintiff answered praying that attorney’s fees be excluded, but in all other' respects the judgment be affirmed.
 

 The defendant avers that she did not abandon her husband. She testifies that her physician recommended that she take a two or three months trip, and she followed his advice and went to California to visit her daughter. She further states that in June, 1952, she was on the verge of a nervous and physical collapse. With respect to her physical condition, Mrs. Callahan’s physician testified:
 

 “Well, her'principal condition at'the time was a complete mental, unrest, secondary anemia as a result of rather severe hemorrhages at the time of menses, and on that basis I had questioned her and she told me of the unrest at home. Because the medicine would not benefit her as long as she was upset and having these episodes of hemorrhage, I recommended a va.cation,. a complete getting away from it all.” . .
 

 Mrs. Callahan stated that, on her return from California in September, 1952, she did not return to the marital domicile —first going to a hotel and then to the
 
 *906
 
 hospital- for approximately sixteen days and then setting up a separate residence —because, in her condition, she felt that she could not go back to her husband’s constant bickering and fussing.
 

 Mr. Callahan, plaintiff, when asked the following question:
 

 “Now, Mr. Callahan, how about June, 1952,' just a few days prior to when your wife left you; did she come home and tell you that she had been ordered by a doctor to take a three months’ rest away from this vicinity ?”
 

 stated:
 

 - “She told me that, understand; I tried to tell her not to go and after that, I forbid, because I never have had any order from my doctor to.”
 

 He said that he did not bother to consult his wife’s physician with respect to her condition.
 

 Mr. Callahan admits that he quarreled with his wife, but he attempts to justify his actions by testifying that his wife provoked all physical and verbal altercations.
 

 Plaintiff in reconvention alleges that the principal act óf cruel treatment occurred in December, T951. We find that Mr, Callahan wanted to ’enter the bathroom, and at the time there was a young lady in the room. Mrs. Callahan called him a “jackass,” and he; grabbed her by the collar. She alleges that he attempted to choke her. A daughter-in-law stopped the altercation by pressing Mr. Callahan’s arm and asking him to cease. The evidence reflects that Mrs. Callahan’s face was red, but we. can only find that Mr. Callahan was in a terrific temper — so was the wife —and not that he was going to intentionally strangle his wife.
 

 Article 143 of the LSA-Civil Code provides :
 

 “Separation grounded on abandonment by one of the married persons can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed.”
 

 In the very early case of Naulet v. Dubois, 6 La.Ann. 403, the plaintiff wife sued her husband for a separation from bed and board on the ground of abandonment. The defendant resisted the action, and, assuming the character of plaintiff in re-convention, claimed a separation from bed and board on the ground of cruel treatment, etc. The court in placing the parties in the same position as they were before suit stated:
 

 “The abandonment, charged upon the defendant, was justified by the habitual brutality and occasional violence which marked the course of the
 
 *908
 
 plaintiff toward him, and is not a legal cause for a separation from bed and board. But although nothing can justify the conduct of the plaintiff, and she is not in a situation to entitle her to relief at our hands, we are of opinion that the defendant himself is not free from blame; and that his .culpable neglect of his wife and children during the seventeen years they remained in Europe, in obedience to his wishes when he had ample means to assist and support them, must have had the natural result of alienating their affection, and of aggravating the situation of which he now complains.
 

 “We have therefore come to the conclusion, that the judgment, so far as it is in favor of the defendant on the reconventional demand, should be reversed and both parties left where their misconduct towards each other has placed them. * * * ”
 

 In the case of Eals v. Swan, 221 La. 329, 59 So.2d 409, 410, we said:
 

 “The Louisiana rule is that while mutual, equal fault operates as a bar to relief being given to either litigant, the courts consider in .each case the degree of guilt, and only where there is a finding of fact that the degree of guilt has been equal is the suit dismissed. The rule of comparative rectitude-has been impliedly recognized. Each case, however, stands on its own particular set of facts.” •
 

 The following statement was made in Gormley v. Gormley, 161 La. 121, 108 So. 307, 308:
 

 “Under our law, disappointment in the marriage relation and mere incompatibility of temper. are not causes for a judicial separation between the spouses; excesses, outrages, and cruel treatment are, but always with the qualification that the complainant must be comparatively free from wrong.
 

 “Where the faults of husband and wife are nearly balanced and are of a similar nature, neither party can be heard to complain in a court of justice. [Authorities]” See, Temperance v. Herrmann, 191 La. 696, 186 So. 73.
 

 Our jurisprudence is to the effect that where one of the spouses leaves the marital domicile for sufficient cause or on provocation, such action is not an abandonment. Champagne v. Duplantis, 147 La. 110, 84 So. 513; Williams v. Varnardo, 117 La. 905, 42 So. 419; Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794.
 

 A review of the record discloses that Mrs. Callahan had sufficient cause to leave her domicile on June 19, 1952 and go to California. Her action did not constitute an abandonment. Her husband was not solicitous of her physical or mental well being, and she had to choose some means of regaining her health. When she
 
 *910
 
 returned, she was not well, and, therefore, she did not return to her home.
 

 However, Mrs. Callahan was certainly not free from fault. She testifies that her husband was guilty of threats; that he deprived her of the use of their car; that he fussed at her in a loud voice; that on one occasion he locked her out of the house; that he turned off the electricity when she returned home late in the evening; that in a rage he attempted to choke her'; and that he did not give her adequate money for her support.
 

 The evidence reflects an incompatibility between'the two spouses. The cruel treatment ' of which Mrs. Callahan complains was brought on by provocation.
 

 It is easier to find fault with remedies proposed than to propose remedies that are faultless. Here we are dealing with the dogma of a human trinity — Father, Mother and child. Laws are enacted to protect the rights of property. These rights cannot be taken away except by due process of law, but the law itself may be changed at the will or even the whim of the legislature. As to property rights, the agreement of the parties is the law of the case, but it is not so with the marriage contract. It cannot be dissolved by mutual consent. The laws relating to dissolution of such contracts will be found in the LSA-Civil Code, and the new legislation so often enacted does not establish new principles of human nature, but only gives a new effect to the old.
 

 “We know of the general repugnancy of the law to dissolve' the obligation of matrimonial cohabitation, and sometimes such repugnance may operate with great severity upon individuals * * * but when people understand that they must live together, except for a few reasons, known 'to the law, they learn to soften by mutual accommodations that yoke which they know they cannot shake off. They become good husbands and good wives from the necessity of remaining husband and wife. Necessity is a forceful master in teaching the duties which it imposes.”
 

 The philosophy of the rule hereinabove cited is applicable to the instant case for the reason that both parties are at fault, and it is difficult to determine which one of the spouses was guilty of the greater fault. Since both are mutually at fault, they should be left where their misconduct towards each other has placed them.
 

 For the reasons assigned, the judgment of the trial court granting Pierre L. Callahan a separation from bed and board on the ground of abandonment is reversed and set aside; the judgment denying the demands of Leoncia Calíais, wife of Pierre L. Callahan, is affirmed; and the attorneys are reserved the right to sue on a quantum meruit basis for their fees. Reversed and affirmed in part.