131 So.2d 103 (1961)
Louis J. FISTER, Plaintiff and Appellant,
v.
Catherine V. FISTER, Defendant and Appellee.
No. 278.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
Rehearing Denied June 28, 1961.
George J. Ginsberg, Alexandria, for plaintiff-appellant.
Gravel, Sheffield & Fuhrer, by David A. Sheffield, C. O. Brown, Alexandria, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for divorce on the grounds of adultery. Plaintiff's petition sets forth that his wife had been guilty of adultery on at least five different occasions with a named co-respondent, and on two other occasions with an unknown person. Defendant denied the adulterous relations and the case went to trial on the merits.
It appears from the record that at the time the alleged affairs of the heart between the defendant's wife and her suitor were transpiring, she and her husband were legally separated. The husband, having become suspicious of the association of his wife and the young man or men, hired a private detective agency to observe her comings and goings during the evening time.
The substance of these detectives' testimony is set forth in the trial court's opinion from which we quote:

*104 "January 16thTassin and defendant drove up to the residence together about 8:15 P.M. and went in, remaining about an hour, and then going to a lounge outside of town. They left at 10:00 o'clock and drove to a skating rink near Tioga where some children were picked up. The group arrived at the residence at 11:15 and all went inside. Tassin came out and drove off at 1:50 A.M.
"January 17ththe automobiles of defendant and Tassin were at the residence at 7:00 P.M. and Tassin's car left at 11:50 P.M.
"January 23rdthe same except that Tassin's car left at 12:55 A.M.
"January 24ththe same except that Tassin's car left at 11:55 O.M.
"January 26ththe automobiles were at the residence from 7:15 P.M. to 11:30 P.M.
"January 27thTassin's automobile at the residence at 7:00 P.M. At 8:00 P.M. he and two young girls came out and drove off, returning shortly thereafter. He left finally at 11:05 P.M.
"February 6thBoth cars at the residence from 7:00 P.M. to 2:00 A.M. when Tassin drove away.
"February 7ththe same except that Tassin left at 12:50 A.M.
"February 13thTassin's vehicle at the residence at 8:00 P.M. At 11:55 P.M. a pick-up truck, arrived and its occupants, a man and woman, went inside. This man left at 1:00 A.M. and Tassin at 1:50.
"February 14thTassin's car at the residence from 8:00 P.M. to midnight.
"February 26that 9:00 P.M. Tassin and defendant drove off and returned after 10:00 o'clock. He left finally at 12:15 A.M.
"In his testimony, Mr. Hawthorne made no mention of the lights in the house ever being off when Tassin was present. Further, so far as we knew, Mrs. Fister's children were present at the home at all times when it was under surveilance except for a period of one hour on January 16th. The record discloses the ages of these children as being 15, 12 and 10, with the first two being girls.
"Plaintiff called defendant under cross-examination and asked her only if she knew Tassin and whether or not she intended to marry him. Her answer to the last question was that marriage plans were indefinite."
At the close of plaintiff's case, which consisted primarily of the evidence quoted above from the trial court's opinion, the defendant filed an exception of no cause of action, which was sustained and the matter is now before us on appeal. The trial court's action in sustaining an exception of no cause of action at the close of plaintiff's case was procedurally incorrect. See Bartholomew v. Impastato, La. App., 12 So.2d 700, Roy O. Martin Lumber Company v. Saint Denis Securities, 225 La. 51, 72 So.2d 257, Kline v. Dawson, 230 La. 901, 89 So.2d 385. However, after oral argument in this court, defendant filed a stipulation here agreeing to submit the case on the merits and we shall so consider it.
It is well settled in our law that a wife's innocence of immoral acts is presumed, and that the plaintiff has the burden of proving the adulterous relationship. Although adultery may be established by indirect or circumstantial evidence as well as by direct evidence (see Coston v. Coston, 196 La. 1095, 200 So. 474; Gastrell v. Gastrell, 176 La. 515, 146 So. 40; Hayes v. Hayes, 225 La. 374, 73 So.2d 179, 180), the rule as stated by the court in Hayes v. Hayes, supra, is that "the circumstantial proof in these cases must be so convincing *105 as to exclude any other reasonable hypothesis but that of guilt".
The facts of this case impress us as being similar to Kendrich v. Kendrich, 232 La. 1104, 96 So.2d 12, 14, in which the Supreme Court stated:
"The evidence against the defendant is strictly circumstantial, his visits to the co-respondent were not surreptitious, his car always being parked in front of her residence, rather than on a side street some distance away. He entered and left by the front door. * * *
"From a reading of the record in this case, we find that plaintiff has not borne her burden of proof, and that the preponderance of the evidence is in favor of the defendant. The trial judge well stated:
"`The jurisprudence, as recently crystallized in the cited cases, is to the effect that, while proof of adultery may be established by indirect or circumstantial evidence, as well as by direct evidence, and a prima facie case for divorce on the ground of adultery may be made by facts or circumstances that lead fairly and necessarily to a conclusion that adultery has been committed, courts must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon them experiences and observations of life, and, weighing all with prudence and care, give effect to its just preponderance. Further that in these modern times, the mere fact that a man and woman are alone together does not necessarily presume it is for an affaire d'amour * * *."
In earlier days, the law, reflecting social customs of the time, did not countenance what today has become acceptable. Note the contrast between the above-quoted test of proof of adultery and that in the ancient Code of Manu, VIII, C. 100:
"It shall be considered adultery to offer presents to a married woman, to romp with her, to touch her dress or ornaments, or to sit with her on a bed."
As the trial court so aptly stated, in the light of the changing mores and attitudes toward social behavior, it is today no longer presumed, at least in a legal sense, that where there is an opportunity to commit adultery it will be committed or that when a man and woman are alone together their only purpose in such a clandestine rendezvous will be for the gentle art of love-making. A suspicion of guilt cannot alone serve as a sufficient basis for the courts to stigmatize the defendant as guilty of the alleged act.
While the testimony of the private detectives leaves no doubt that the opportunity to commit adultery was ever present, we do not find that the plaintiff has borne the burden of proving his case.
For the reasons assigned, the judgment appealed from is amended so as to hold that plaintiff's suit is dismissed on the merits, rather than on the exception of no cause of action. As so amended, the judgment is affirmed. All costs of this appeal are assessed against the plaintiff.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.