AYRES, Judge.
This is an action by a husband for divorce on the grounds of adultery wherein, in the alternative, he seeks a separation from bed and board from his wife on grounds of cruel and inhuman treatment. The defendant denied the charges directed against her and, in reconvention, charged plaintiff with acts of cruelty, and sought a separation in her behalf, as well as custody of her minor child, and alimony for herself and support of the child.
In giving consideration to the evidence at the conclusion of the trial, the trial court found that neither party had established his or her demands by a legal preponderance of evidence. Hence, there was judgment rejecting the demands of both parties, from which each prosecutes an appeal to this court.
The evidence with reference to plaintiff’s demands for a divorce consists of testimony that, at various times during plaintiff’s absence of approximately five years as a member of the U. S. military forces in the Far East, defendant had rented a room to Olin Darwin Duvall, first in Temple, Texas, where she and her four daughters resided, and later in Shreveport where she and Du-vall had found employment. This fact was readily admitted by defendant and Duvall, both of whom testified additionally as to two or three visits which they made together to his mother’s home at Boswell, Oklahoma. On these occasions, it was testified, defendant was accompanied by one of her daughters. Both defendant and Duvall denied the commission of any wrongful acts.
The rule is well established in the jurisprudence of this State that a wife’s innocence of immoral acts is presumed; that the burden is upon the husband, in charging her with immorality, to establish the adulterous relationship by either direct or circumstantial evidence; and that, if circumstantial evidence is alone relied upon, the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt. Hayes v. Hayes, 225 La, 374, 73 So.2d 179 (1954); Coston v. Coston, 196 La. 1095, 200 So. 474 (1941); Gastrell v. Gastrell, 176 La. 515, 146 So. 40 (1933); *676 Fister v. Fister (La.App.) 131 So.2d 103 (3d Cir. 1961).
 Suspicion of guilt arising even to a high degree is nonetheless suspicion and insufficient to establish lack of chastity in view of the rule that, where the chastity of a female is involved, a court of justice must be guided by only clear-cut evidence. Olivier v. Abunza, 226 La. 456, 76 So.2d 528 (1954); Fister v. Fister, supra.
The absence of other circumstances of such nature as to make fairly certain the conclusion that the parties not only had the opportunity to commit adultery but that they did so is insufficient to establish such act. Hayes v. Hayes, supra; Savin v. Savin, 218 La. 754, 51 So.2d 41, 45 (1951).
In this regard, it may be pointed out there was no other incriminating fact or circumstance established than that-Duvall rented a room in defendant’s home and that he and defendant visited his mother in Oklahoma. On these occasions defendant was accompanied by a daughter. The evidence to which we have referred may create suspicion of wrongdoing, but it does not constitute proof to that degree of legal certainty upon which a judgment may be based.
Plaintiff urges that, in the event the evidence is found insufficient to justify a divorce, this cause be remanded in order that additional testimony of Duvall, the alleged corespondent, may be taken and incorporated in the record. While Duvall denied, during the original trial, any wrongdoing with defendant, he has, by affidavit attached to plaintiff’s motion, sworn that since he testified he has been shot by defendant and that “he is now ready to testify as to their sexual relationship.”
The rule is that while a corespondent is not disqualified by law from testifying with reference to his intimacies •with an erring spouse, the statements made by him must not only be corroborated but received and weighed with great caution before being accepted as true. Olivier v. Abunza, supra; Clark v. Clark, 207 La. 606, 21 So.2d 758 (1945); Mouille v. Schutten, 190 La. 841, 183 So. 191 (1938).
Conceding that the corespondent would testify as his affidavit indicates, such proffered testimony would not be of consequence when viewed in the light of the rule established by the jurisprudence. There is nothing in the record which would corroborate it. The testimony, if received, would only establish that the witness would have committed perjury on at least one occasion. Moreover, the reprehensible character of the evidence offered and the caution with which it must be received and weighed mitigate the effect of the testimony, even if it were considered.
The motion to remand is, for these reasons, without merit and must be overruled.
Remaining for consideration are the charges and countercharges of cruelty, together with defendant’s additional charge of abandonment, upon which the parties rely for a judgment of separation. On these issues the court concluded neither party had borne the burden of proof imposed upon him. In this regard it was observed there was no evidence in the record to corroborate the testimony of either party.
The undisputed facts are that plaintiff and defendant were married February 14, 1941, and 20 years later established their matrimonial domicile in Caddo Parish, where it has since been maintained. Plaintiff, at the time of his marriage to defendant, had entered the military service of the United States as a career. During April, 1960, plaintiff went overseas for a period of 18 months. This service was extended, by voluntary requests, for periods of six months thereafter until May 17, 1965, when he returned home.
The gist of Mrs. Karl’s complaints, according to her testimony, consisted of the fact that plaintiff extended his overseas assignments without consultation with her and without consideration of his obligations *677 as a husband and father; that he failed or neglected to take his family with him, particularly to the Philippines where he was first stationed; that, during the past two years of plaintiff’s assignments overseas, she received only three letters from him, one of which was written as a result of her appeal to his chaplain; that she was not informed of his return until after his arrival at a local airport; that, upon reaching their home, his greeting was very perfunctory; and that he refused to resume any marital relationship and told her that his love and care for her had been extinguished.
With reference to the matters of which defendant complained, plaintiff explained that when he went to the Philippines it was most difficult to obtain housing accommodations for his family and there was a long waiting priority list of applications; that his extensions of assignments overseas were made to enable him to advance in military grade which, as he explained, could hardly have been expected had he remained in the United States. Upon arriving at the airport he telephoned his wife and requested that she pick him up and take him home, but, because of her engagement in a beauty shop which she operated in their home, she could not, or at least did not, come for him. He took a taxi to the house.
Plaintiff’s testimony was that when he returned home he had the same feelings for his wife that he had when he left and which he had during the time he was gone, that he was anxious to get home, and that he loved his wife. With reference to their meeting and his greeting, he explained that Mrs. Karl continued working on a customer in her shop, thus preventing an exchange of embraces. With reference to their home life, he testified that defendant instructed him to put his belongings in a spare bedroom where he was to sleep, and that within a few nights thereafter, while she was intoxicated, she invited him into her room.
A few days later, they were visited by defendant’s brother and his wife. Plaintiff testified that the brother invited him to the N.C.O. Club at Barksdale Air Force Base where they remained for only an hour or so; that, upon returning, they were met by Mrs. Karl who was waiting with gun in hand; and that she cursed him, pointed the gun in his direction and fired it into the ceiling over his head, after which she threw the gun to the floor where it again discharged. All that time, he testified, his wife was screaming at him with vile and profane declarations, and she ordered him to pack his bag and leave their home immediately.
There was no dispute as to the episode with the gun. Defendant’s explanation for her conduct was that she wanted to scare plaintiff into talking to her and into giving her some consideration, since during the four days he had been home he had engaged in no conversation and had ignored her completely.
That plaintiff ignored his wife, particularly while overseas, and failed or refused to write her except on very rare occasions is virtually conceded by plaintiff who attempts to explain his actions by saying he lacked time and opportunity to write. He, however, was not engaged in combat. It is common knowledge that the Government facilitates in every way possible communications between those in the military service overseas and their families back home.
Plaintiff’s lack of consideration for his wife, a matter odious in itself, evidences his utter disregard for her and the family. Her conduct may be partially explained but not justified in the language of a poet when he said:
“Heaven has no rage like love to hatred turned,
Nor hell a fury like a woman scorned.”
As was observed in Smith v. Smith (La. App.) 139 So.2d 813, 815 (2d Cir.1962),
“The law, which provides for a separa-' tion from bed and board, in certain cases, is made, of course, for the relief of the oppressed party, not for interfering in *678 quarrels where both parties commit reciprocal excesses and outrages, * *
In the cited case the rule was recognized as well established that a divorce or separation will not ordinarily be granted where both parties are equally at fault. Thus, it was stated, as a general rule, a divorce or separation is a remedy for the injured and innocent against the guilty and for those who are substantially without fault hut that where both parties are equally at fault, neither will be permitted to prevail. The observation followed that if the conduct of both parties has been such as to furnish grounds for the relief of the other, neither is entitled thereto, or, as the rule is sometimes expressed, if both parties have a right to a divorce or separation, neither of the parties has such a right. 27A C.J.S. Divorce § 67, p. 22S et seq.
The rule is, in this State, that while mutual, equal fault operates as a bar to relief for either litigant, the degree of guilt must be equal to warrant a dismissal of an action for a divorce or separation. Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591 (1956); Callahan v. Callais, 224 La. 901, 71 So.2d 320 (1954); Eals v. Swan, 221 La. 329, 59 So.2d 409, 410 (1952); Smith v. Smith, supra; Gilbert v. Hutchinson (La.App.) 135 So.2d 283 (3d Cir.1961); Miguez v. Miguez (La.App.) 128 So.2d 799 (3d Cir.1961).
In Gilbert v. Hutchinson, supra, it was observed that:
“Under the Louisiana doctrine of comparative rectitude, when the faults of husband and wife are equally balanced and of a similar nature, a separation or divorce is denied for the assigned reason that the parties should be left where their mutual misconduct has placed them.”
If the versions of the matters herein concerned, as testified by each of the litigants, are accepted as true, and if the facts are as admitted by them or as otherwise established by proof in the record, our conclusion is that there has been mutual fault of an equal degree on the part of both husband and wife.
We are constrained to conclude that under the facts and circumstances of this case defendant’s actions, of which plaintiff complains, were, for the reasons heretofore stated, sufficiently provoked to be justified: In this regard, it was pointed out in Pardue v. Pardue (La.App.) 135 So.2d 116, 119 (1st Cir.1961), there is a well-settled rule of law in this State that conduct provoked by the actions of a spouse may not be relied upon as a ground for a separation “a mensa et thoro.” See, also, Schaneville v. Schaneville, 223 La. 556, 66 So.2d 335 (1953); Eals v. Swan, supra; Abele v. Barker, 200 La. 125, 7 So.2d 684 (1942); Armentor v. Gondron, 184 La. 922, 168 So. 102 (1936).
For the reasons assigned, the judgment appealed is affirmed. Each of the litigants is assessed with his or her costs incurred on the appeal.
Affirmed.