SAMUEL, Judge.
These two suits for a separation from bed and board, both filed by Mrs. Karen Ann Aiple Geraci against her husband, Victor Carlo Geraci, Jr., were consolidated for trial in the district court and for argument in this court.
The first suit, No. 3,573 of our docket, was filed on August 28, 1968; it sought a judicial separation on the ground of abandonment, the pertinent allegation of the petition being that the litigants separated on or about August 17, 1968 “ * * * when the said defendant returned from a fishing trip and then left the domicile and the said plaintiff and defendant have not lived together since defendant’s leaving.” On September 16, 1968, while testifying in that suit during trial of a rule for alimony and custody, Mrs. Geraci admitted her husband had not abandoned her and that, following the fishing trip, they had lived together in the matrimonial domicile continuously to and including the date she gave the testimony. After the rule had been heard Mr. Geraci reconvened for a separation on the ground of abandonment which he alleged occurred on September 18, 1968.
On September 23, 1968 Mrs. Geraci filed the second suit against her husband (No. 3,-572 of our docket), praying for a separation from bed and board, custody of their two minor children, alimony for the support of herself and the children, an injunction prohibiting the defendant from disposing of or encumbering the community property, and the right to reside in the family home during pendency of the proceedings, or alternatively, for additional alimony for rent should she not be per *544 mitted to live in the family home. The petition in the second suit alleges the litigants separated on or about September 18, 1968 when she was forced to leave the family domicile because of the many enumerated allegations of cruel treatment inflicted on her by the defendant.
Following trial of the consolidated suits there was judgment in the first (No. 3,573) dismissing plaintiff’s demand on the ground that her husband had not abandoned her on August 17, 1968 as alleged and dismissing the defendant’s reconventional demand on the ground that his wife did have legal cause to leave the matrimonial domicile on September 18, 1968; and there was judgment in the second suit (No. 3,572) granting plaintiff a separation from bed and board, awarding her custody of the two minor children with reasonable visitation rights given the defendant, condemning the defendant to pay alimony for the support of his' wife and children, and preventing him from disposing of community property pending dissolution of the community. The defendant has appealed from the judgments in both suits.
The only evidence contained in the record is the testimony of the two litigants and a stipulation to the effect that if plaintiff’s mother were called as a witness her testimony would be essentially the same as that given by the plaintiff. We are unable to rely on the stipulation to any extent because it is obvious that Mrs. Aiple could not have possessed any personal knowledge of many of the alleged acts of cruel treatment referred to in the testimony, if indeed she had any such knowledge as to any of those acts. After plaintiff left the matrimonial domicile on September 18, 1968 she did go to live with her mother and father, taking the two children with her, and we believe the stipulation has reference only to the crowded conditions under which plaintiff and her children lived with her parents after that date.
Plaintiff’s petition in the second suit alleges twenty acts of cruel treatment ranging from coming home at late and unusual hours and excessive drinking of intoxicating liquors to carrying a gun with improper motives and disengaging a battery wire on their automobile for the purpose of preventing her from using the car. No evidence was offered regarding some of those alleged acts. In support of others plaintiff testified as follows :
Her husband, who was employed as a pharmacist, returned home from work at any and all hours practically every night, sometimes extremely late, and did not eat regular meals with the family. Upon returning home he was often in a drunken condition and on many occasions he had been drinking (on cross examination Mrs. Geraci admitted her husband had been drunk on only one occasion, although he had been sick a “couple” of times and she knew he had been drinking because she smelled liquor on his breath many times). He frequently gambled while away from the domicile. As the windshield of her parents’ automobile had been broken on a night when he and her parents had an argument, she assumed he had broken the windshield. Because on one occasion she had trouble with the car, she also assumed he had disconnected a battery wire so she could not use the vehicle. Her husband carried a gun and had insinuated he could use it on her parents. He told her to leave the house and go live with her parents. On one occasion he cursed her and on another she was called “trash”; but the latter incident occurred during a telephone conversation between the defendant and his father when she picked up the extension phone, said something and was told to mind her own business and hang up and we are unable to determine from her testimony whether the word was used by her husband or by her father-in-law. She further testified the defendant did not adequately support her and the children, although she admitted he regularly gave her a blank check with which to purchase groceries and he did purchase clothing when he felt the budget was sufficient for that purpose.
*545 The defendant generally denied plaintiff’s accusations. He admitted coming home late on some occasions, especially during the last two months the litigants lived together, a result, he said, of frequent arguments which eventually led to plaintiff’s refusal to engage in marital relations with him. During this time he did do some drinking, principally because of the ■ home situation, but never to excess, as shown by the fact that he never missed a day’s work. He denied: having engaged in gambling, except rarely at his father’s home and then for very small stakes, stating his financial situation was such he could not afford to gamble even if he desired to do so; breaking the windshield of his father-in-law’s automobile; the charge relative to disconnecting a battery wire on his car, explaining that the battery cable was loose and at one time did give some trouble; he had ever carried a gun except on one occasion when a racial problem appeared imminent; and that he had told his wife to leave the house. He never called her “trash”; but he did admit cursing her on one occasion when she slammed his hand in a door during an argument. He further testified he had financial difficulties, frequently necessitating the borrowing of money to meet obligations, but that he supported his wife and family to the limit of his financial ability.
In some instances, such as the gambling, the breaking of the windshield and the disconnecting of a battery wire, plaintiff testified to matters not within her own knowledge and such testimony does not constitute proof of those matters. And we feel it proper to say that the allegation contained in her petition in the suit first filed, that her husband left the domicile on August 17, 1968, which allegation was the sole basis for the judgment of separation she then sought and which allegation admittedly was untrue, does not enhance her credibility as a witness. In addition, she testified in generalities, without approximate dates, at times apparently referring only to the last two months the couple occupied the matrimonial domicile together. One part of her testimony on direct examination appears to us to have special significance:
“Q. Now the reasons you have enumerated on the witness stand thus far are these basic reasons why you left home and established a domicile with your mother?
A. Well that led up to it. The reason I actually left the home was that I left on a Wednesday night. We had gone to Court that Monday morning and so Vic said I lost the the case and he had been tormenting me and aggravating me ever since that morning because the Judge granted me alimony and I did not have to do anything for Vic as far as fixing meals for him or doing his laundry or anything so he decided that he was going to start aggravating me and he demanded that I cook for him and would torment me when I wouldn’t * * (Emphasis ours.)
The record as a whole reveals that over a long period of time there were many disagreements and arguments between the parties, caused in large measure by in-law interference, a situation complicated by the fact that they did have considerable financial difficulties. According to the testimony of both plaintiff and defendant, the disagreements and arguments were practically continual; every six or eight months they would have a discussion relative to whether they should separate or stay together; and they did see a marriage counselor in an effort to preserve the marriage.
 We are satisfied that the conditions complained of are no more chargeable to one of the parties than to the other. Since the faults of both are nearly balanced and are of a similar nature, neither can be heard to complain; the wife is not entitled to a judicial separation on the ground of cruel treatment and the husband is not entitled to such a separation on the ground of abandonment. Callahan v. Callais, 224 La. *546 901, 71 So.2d 320; Sciortino v. Sciortino, La.App., 188 So.2d 224.
For the reasons assigned, the judgment appealed from in suit No. 3,573 of our docket is affirmed. The judgment appealed from in suit No. 3,572 of our docket is reversed and in that suit it is now ordered that there be judgment in favor of the defendant, Victor Carlo Geraci, Jr., and against the plaintiff, Karen Ann Aiple, wife of Victor Carlo Geraci, Jr., dismissing the latter’s demands.
Judgment in suit No. 3,573 affirmed.
Judgment in suit No. 3,572 reversed.