296 So.2d 382 (1974)
John Paul BYNUM, Plaintiff-Appellee,
v.
Dorris Louise Ward BYNUM, Defendant-Appellant.
No. 12326.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1974.
Rehearing Denied July 1, 1974.
*383 Goode & Goode, by D. F. Overdyke, III, Shreveport, for defendant-appellant.
Johnston, Thornton & Pringle, by R. Perry Pringle, Shreveport, for plaintiff-appellee.
Before AYRES, BOLIN, and WILLIAMS, JJ.
AYRES, Judge.
This action by a husband against the wife for a divorce is predicated upon charges of adultery directed against the wife with an alleged male companion (whose name, however, was not disclosed in plaintiff's petition) between the hours of 11:35 p. m. on November 10, 1972, and 5:00 a. m. on November 12, 1972, in a motel in Birmingham, Alabama. To each of the pertinent allegations of plaintiff's petition, defendant entered a denial.
After trial, there was judgment decreeing a divorce. From that judgment, the defendant prosecutes this appeal.
Plaintiff and defendant were married in El Reno, Oklahoma, on June 5, 1953, after which, in 1970, they moved to establish their matrimonial domicile in Shreveport, Caddo Parish, Louisiana. Four children were born of their marriagethree sons, whose ages are now 20, 19, and 17 years, respectively, and a daughter whose present age is 16 years.
On this appeal, the appellant specifies as error the action of the trial court: (1) in holding that plaintiff sustained the burden of proof imposed upon him by law and established that she committed adultery; (2) in admitting in evidence an unverified telphone bill; (3) in requiring the alleged co-respondent to answer certain incriminating questions; and (4) in overruling exceptions and pleas of res judicata, judicial estoppel, collateral estoppel, and no cause of action.
With reference to the fourth of these specifications, it may be pointed out that the pleas and exceptions are allegedly *384 based upon a separation proceeding between the parties in which a judgment decreeing a separation a mensa et thoro in her favor had become final prior to the institution of this action predicated on acts of adultery allegedly committed before the institution of the separation proceeding. In view of the result reached in this action with respect to the predominant questions involved on the merits of this controversy, it is deemed unnecessary that any consideration be given to these pleas and exceptions.
For the same reasons, it is likewise deemed unnecessary to discuss appellant's third specification of error, the merits of which have no bearing upon the outcome of the present action.
The first specification of error is directed to the sufficiency of the evidence in the record to establish appellant's commission of adultery or whether there is, indeed, evidence in the record from which the commission of such acts can be concluded. Of particular concern is the question as to whether the evidence establishes that the woman with Dr. Mullen in Birmingham was Mrs. Bynum.
Only three witnesses were presented by plaintiff: Pat Leroy Eddings, a detective, Dr. Andrew J. Mullen, the latter disclosed as the alleged corespondent, and plaintiff, Bynum, himself.
Eddings testified he had been employed in November of 1972 by Mrs. Betty Mullen, wife of Dr. Mullen, to observe Dr. Mullen's activities in view of her intention to obtain a divorce from him. On November 11, 1972, Eddings and Mrs. Mullen flew to Birmingham where they were joined by another detective whose name was given as George Palmer. Their surveillance of the room in which Dr. Mullen spent the night covered a period from approximately 5:16 p. m. on November 11, 1972, until 5:00 a. m. the following morning. Eddings testified that at about 9:00 p. m., Dr. Mullen and a female returned to the room carrying what appeared to be some food; that they remained in the room, and the next time he saw the female was at 4:12 a. m. on November 12, when she opened the door and peered outside, apparently for the purpose of checking on weather conditions. She was said to have had curlers in her hair and to have been wearing a bathrobe. About 5:00 a. m., Dr. Mullen came out of the room with a suitcase and, in a few minutes, the female followed him, whereupon Eddings, Mrs. Mullen, and Palmer walked out and confronted Dr. Mullen. Mrs. Mullen spoke to her husband who, Eddings said, appeared to stand in front of the woman.
The lights were subdued on the occasions Eddings claimed to have observed the woman. His observations were directed primarily to Dr. Mullen rather than to his companion, because his primary duty was to Mrs. Mullen who was seeking evidence upon which a divorce from her husband might be obtained.
The instant case was tried in the district court on November 15, 1973. Detective Eddings does not claim to have seen the woman who was with Dr. Mullen from the time he was in Birmingham until the day before the trial. On that date, Eddings saw a woman in the district courtroom who he claimed was the woman he had seen with Dr. Mullen in Birmingham. He was informed by plaintiff's counsel that this woman was Mrs. Bynum. However, he did not, of his own knowledge, know that she was Mrs. Bynum. Otherwise, the record is barren of testimony by anyone who knew Mrs. Bynum that she was the woman whom Eddings saw in Birmingham or in the courtroom.
We are impressed that Eddings' experience in investigating matters of this kind was, according to his own testimony, very limited. During the last five years, he stated, the instance in Birmingham was the only domestic matter that he had investigatednot more than two. This was not his particular type of work. His training was that of an investigator in the United States military service.
*385 Nor are we impressed with the accuracy of the witness' observations, which were lacking in important details. He observed no distinguishing physical characteristics of the female in question, nor the color of her eyes, nor her eyebrows or ears. The witness did testify, however, that the woman did not wear glasses. He did not know if she wore contact lenses, nor if her eyes blinked excessively, which was said to be indicative of that fact. Nor did he observe whether she limped in her walk or know whether she wore a wig. The total elapsed time over which the witness observed the woman in Birmingham was probably, so he stated, two-and-a-half or three minutes. The woman's age was estimated by the witness to be in the late 20s, although the oldest of Mrs. Bynum's four children was approaching the age of 20 years. No observation was made as to the woman's height.
The evidence, when considered as a whole, fails to support plaintiff's claim by the requisite preponderance that the female with Dr. Mullen in Birmingham on the occasions and dates referred to was Mrs. Bynum. The establishment of that fact was crucial to plaintiff's entitlement to recovery. The most that can be said in support of plaintiff's position is that he established a mere possibility that the person involved was Mrs. Bynum.
The rule is incontrovertibly established in the jurisprudence of every appellate court of this State that a plaintiff in civil matters such as this bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment. Roberts v. M. S. Carroll Co., 68 So.2d 689, 693 (La.App., 2d Cir., 1953). See the authorities therein cited and those which have been quoted therefrom with approval.
Reliance for corroboration of the claim that Mrs. Bynum was in Birmingham is placed by plaintiff in his telephone bill of South Central Bell dated December 4, 1972. The bill is not verified and its contents are hearsayhence, inadmissible. Moreover, its recitals were not shown to be correct. Plaintiff testified that Mrs. Bynum called him collect on November 11, 1972, from Birmingham. He also testified that on the same date he received two collect calls from his wife in Dallas, Texas. The bill, if it is correct, reflects that a call was made from Birmingham on the aforesaid date from a designated telephone number. No effort was made to check the telephone number from which the call originated. The symbols on the bill reflect that the call, during the evening hours, was a station-to-station collect call. With reference to the Dallas calls, the bill does not reflect that they originated in or from Dallas, as plaintiff testified, but that the place called was Dallas. The symbols clearly reflect that these were customer-dialed evening calls, dialed from the customer's number. The telephone bill provides no positive basis for Mrs. Bynum's presence in Birmingham beyond a possibility or conjecture.
Moreover, with respect to the weight of the testimony of a detective, this court observed in Patrick v. Patrick, 212 So.2d 145, 146 (La.App., 2d Cir., 1968 writ refused), that:

"Appellant contends testimony of private detectives employed by one of the litigants should be carefully considered and accepted with extreme caution and, in order for such evidence to be controlling, it should be substantially corroborated by other evidence. We are in full accord with this contention and think it is a fair statement of our law. However, such testimony should not be rejected except in those instances where it is lacking in actual probative value. McCartan v. Filkins, 134 La. 795, 64 So. 717 (1914); Poole v. Poole, 189 So.2d 75, La.App. 1 Cir. (1966)." (Emphasis supplied.)
*386 In McCartan v. Filkins, supra, the Supreme Court of Louisiana, with reference to the trial court's action in rejecting a demand for a divorce, stated:
"`Although the testimony of a person employed to watch and detect the husband or wife suspected of adultery is competent and ought not to be absolutely rejected, it should be received with great caution, and scrupulously and minutely scrutinized, and ordinarily it should be corroborated either by the facts and circumstances in evidence, or by the direct testimony of other witnesses, or by both.'

"The reason for receiving the testimony of a hired employe, or detective, with great caution is obvious. A man who sets himself up as a discoverer of supposed delinquencies, whose pay depends upon the extent or success of his employment, the extent of his employment depending upon the discoveries he is able to make, becomes a most dangerous witness. The courts have therefore been slow, or rather cautious, in receiving such testimony. It requires corroboration before it will be made the basis of a judgment of court.
"The record shows that plaintiff employed a detective for the purpose of discovering acts of adultery by his wife with a certain named man, and that this detective placed the matter in the hands of two of his employes, and they are the witnesses who testified to the acts of adultery alleged in the petition." (Emphasis supplied.)
In reversing the judgment appealed and awarding plaintiff judgment, the court emphasized that:
"These witnesses do not testify positively, but circumstantially. Their testimony is corroborated in almost every particular by witnesses for the defendant,. . . ." (Emphasis supplied.) 64 So. 717.
Contrary to the facts of the cited case, there are no corroborating facts and circumstances in the instant case with respect to the detective's testimony that the woman said to have been with Dr. Mullen in Birmingham was Mrs. Bynum. It appears important to note that the testimony of neither Mrs. Mullen, who was at the time checking on her husband's activities, nor George Palmer, a detective employed to assist the other, though both were with and assisted Eddings in the surveillance, was taken. Their absence and the failure to take their testimony were unexplained. The presumption is their testimony, had it been taken, would not have supported plaintiff's position.
In Karl v. Karl, 191 So.2d 674, 675-676 (La.App., 2d Cir., 1966), we emphasized certain principles which are appropriate here. There we stated:

"The rule is well established in the jurisprudence of this State that a wife's innocence of immoral acts is presumed; that the burden is upon the husband, in charging her with immorality, to establish the adulterous relationship by either direct or circumstantial evidence; and that, if circumstantial evidence is alone relied upon, the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt. Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954); Coston v. Coston, 196 La. 1095, 200 So. 474 (1941); Gastrell v. Gastrell, 176 La. 515, 146 So. 40 (1933); Fister v. Fister (La.App.) 131 So.2d 103 (3d Cir. 1961).

"Suspicion of guilt arising even to a high degree is nonetheless suspicion and insufficient to establish lack of chastity in view of the rule that, where the chastity of a female is involved, a court of justice must be guided by only clearcut evidence. Olivier v. Abunza, 226 La. 456, 76 So.2d 528 (1954); Fister v. Fister, supra." (Emphasis supplied.)
See, also: Dubois v. Falgout, 268 So.2d 70 (La.App., 3d Cir., 1972); LaTour v. Fuselier, *387 228 So.2d 336 (La.App., 3d Cir., 1969).
Thus, before the wife can be stigmatized, the proof of adultery should be so clearly and conclusively shown that there is no practical theory under which she could be innocent when all the evidence is considered together. Meyer v. Hackler, 219 La. 750, 54 So.2d 7, 9 (1951). No such showing has been made here.
For the reasons hereinabove assigned, we are constrained to conclude that plaintiff has failed to establish, by a preponderance of evidence and to that degree of certainty required by law, the basis of his demand for a divorce. Hence, the judgment appealed is annulled, avoided, reversed, and set aside; and plaintiff-appellee's demands are hereby rejected at his costs.
Reversed.