GULOTTA, Judge.
This is an appeal from a judgment awarding the husband a legal separation as a result of the wife’s “violent temper” which rendered their living together insupportable. The wife, in a separate suit, seeks a divorce based on the husband’s adultery, and alternatively, for a separation on the grounds of cruelty. We affirm.
The husband contends that the wife’s evidence was insufficient to support her allegations of adultery. In the alternative, the husband complains that even if this court finds sufficient evidence to warrant a finding of his adultery, the wife condoned the adulterous acts by continuing to live with him after becoming aware of his infidelity. Finally, the husband objects to the wife’s filing of a supplemental and amended petition alleging four acts of adultery additional to the two adulterous acts alleged in the wife’s original petition. According to the husband, these additional acts presented new causes of action and could not relate to the original petition filed by her on the ground of adultery.
The wife contends: 1) that the trial court erred in finding the evidence insufficient to prove adultery; 2) that the trial court erred in finding the wife at fault, resulting in a judgment of separation in favor of the husband; and, 3) finally, that the trial court erred in not granting her a separation based on the husband’s cruelty.
In connection with the dismissal of the wife’s claim for divorce on the ground of the husband’s adultery, the court, in written reasons, stated:
“The wife, Theresa Soroe, attempted to show through private investigators that her husband, Louis Soroe, had committed adultery on the dates heretofore mentioned. From the testimony of the investigators, this Court cannot find any basis for substantiating the fact that Louis Henry Soroe committed adultery on any dates mentioned in the petition or supplemental petition. There is no doubt that on occasion Mr. Soroe met the individual in question, but the way the Court understands the law, evidence was not sufficient to prove the fact of adultery.”
We agree.
The wife’s petition for divorce alleged that the husband committed acts of adultery on August 1, 1974 and August 9, 1974. However, the wife’s supplemental and amended petition alleged additional acts of adultery on January 11, 1975, January 18, 1975, February 1, 1975, and February 8, 1975. The testimony of the private investigators, employed by Mrs. Soroe to support the allegations of adultery, is as follows :
August 1, 1974 — George Scallan testified that he saw Soroe’s automobile parked at the residence of the other woman between 8:00 a. m. and 8:45 a. m. Scallan did not see Soroe or the other woman on this occasion.
August 9, 1974 — June Scallan testified that she observed Soroe and the woman arrive, by automobile, at the woman’s residence at 8:05 p. m. She did not see them enter the residence and did not know whether or not any lights were on in the apartment. She saw Soroe depart the residence at approximately 8:30 p. m. George Scallan corroborated June Scal-lan’s testimony as to times of arrival and departure.
January 11, 1975 — June Scallan observed Soroe arrive at the woman’s apartment at 8:25 p. m. She saw Soroe and the woman walking toward the back stairs, but did not know whether they entered the apartment. This investigator did not notice whether or not any lights were on in the apartment. She saw them leave at 10:40 p. m. According to Mrs. Seal- *545 lan, Soroe returned to his home on Breakwater Drive at 11:00 p. m. Mrs. John Schexnayder, another private investigator, corroborated Mrs. Scallan’s testimony. However, she stated that the upstairs lights were on in the apartment. Mrs. Schexnayder did not know whether or not she could identify the other woman.
January 18, 1975—George Scallan testified that he saw Soroe and the woman meet at the City Park Golf Driving Range at approximately 6:30 p. m. The Soroe vehicle arrived shortly before the woman’s automobile. Soroe then entered the woman’s vehicle and they proceeded to the woman’s residence. They arrived at 7:05 p. m. and entered the upstairs apartment. Scallan testified that the parties left the apartment at 10:35 p. m. Scallan further stated that there was a light on during the time that the parties were in the apartment. Mrs. Scallan essentially corroborated her husband’s testimony as to arrival and departure times, but was unsure as to whether any lights were on in the apartment.
February 1, 1975—Scallan testified the parties again met at the City Park Golf Driving Range at approximately 9:00 p. m., and shortly thereafter departed. Scallan observed nothing further on this occasion. June Scallan substantially corroborated the testimony of her husband.
February 8, 1975—June Scallan testified that she saw the parties meet at the City Park Golf Driving Range at approximately 8:00 p. m. Soroe and the woman subsequently departed.
The private investigators stated thet they did not see Soroe and the woman, at any time, in a state of undress. Mrs. Scallan testified that she did not know the room arrangement of the woman’s residence or if anybody else lived in the woman’s apartment.
Soroe did not recall visiting the woman’s apartment on any of the abovementioned dates. He did testify that since August 1, 1974, he had visited the woman, “a friend”, on a few occasions. So much for the testimony relating to the adultery charge.
The Louisiana Supreme Court has held that the mere fact a man and woman are alone together does not necessarily presume that it is for an affair. See: Kendrick v. Kendrick, 232 La. 1104, 96 So.2d 12 (1957). As was stated in Bynum v. Bynum, 296 So.2d 382 (La.App. 2d Cir. 1974):
“The rule is incontrovertibly established in the jurisprudence of every appellate court of this State that a plaintiff in civil matters such as this bears the burden of proof. He is required to establish his claim to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment. * * * ”
See also Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954).
Under the circumstances, we cannot conclude the trial judge erred in his determination that the wife failed to show by a preponderance of the evidence that the husband committed adultery on any of the specified dates. Having so concluded, it becomes unnecessary to consider whether or not the wife condoned the alleged adulterous acts or if the additional acts, alleged in the supplemental and amended petition, constituted new causes of action.
We now turn to a consideration of each party’s claim to a separation on the ground of cruel treatment. The testimony reveals that prior to 1965, the husband and wife resided at the home of the wife’s parents on Cleveland Street in New Orleans. In January, 1965, the husband established a separate residence at 8004 Breakwater Drive, also in New Orleans. Soroe testified that living at his wife’s parents’ home was not conducive to the furtherance of a *546 good marriage and that although in January, 1965, he had asked his wife to leave her parents’ residence for the purpose of establishing a separate residence, she refused. The wife corroborated the fact that her husband had requested she leave her parents’ residence. The Soroes’ only living child, David, went to live with his father in January, 1973, at the Breakwater address. According to David, it was intended that his mother move to the new residence with his father in January 1973, however, she refused, ostensibly because the Breakwater residence was unfinished. David testified that the residence had been completed, but his mother did not want to leave the home of her parents.
On July 1, 1974, the parties made an attempt to establish a matrimonial domicile on Breakwater Drive and the wife moved into that residence. She stayed one day, and then returned to the home of her parents. David testified that his mother left because his father refused to buy her a television set.
Mrs. Soroe returned to the husband’s residence on July 21, 1974. On the night of July 25, 1974, she accused her husband of seeing other women, and an altercation took place in which Mrs. Soroe scratched her husband’s chest and tore his shirt. According to the wife, she only scratched her husband because he had punched her. However, the son, a partial observer to this altercation, testified that his father did not, in any way, strike or push his mother.
The wife continued living with her husband until August 27, 1974. Soroe testified that during this period of time the relationship between the parties was. strained. The husband stated that he asked her to leave, but she refused.
Finally, on August 27, 1974, Soroe changed the locks on the Breakwater residence and moved his wife’s personal belongings to her parents’ home. The wife attempted to gain entrance to the house, and the police were called. As a result, Mrs. Soroe was taken by the police to the home of her parents. However, an hour or two later, the wife returned to the Breakwater residence and forcefully attempted to gain entry into the house. In the attempt, she broke one of the windows with a rock, cutting her arm in the process.
In his reasons for judgment, the trial court stated:
“On the other hand, there appears to this Court to be ample evidence to date that Theresa Soroe has a violent temper and is, evidently, difficult to live with. She stayed a great portion of her time with her parents who are, evidently, substantial citizens, and was very happy with the arrangement of such living. Her husband, however, was somewhat dissatisfied and attempted to establish a domicile of his own. Louis Soroe attempted to establish a domicile with his wife at 8004 Breakwater Drive, New Orleans, Louisiana, but was not successful. At least on one occasion the Court is convinced that the wife was the cause of an incident which resulted with the calling of the police.
“The parties’ elder son testified that his mother refused to live with the father and he [sic] at the address in question.”
The trial judge was presented with conflicting evidence on the husband’s claim of cruelty and the wife’s counterclaim for cruel treatment. We cannot say that the record fails to support the trial judge’s findings. The judgment is affirmed.

AFFIRMED.