SARTAIN, Judge.
In this domestic relations case, William Walter Thompson, Sr., appeals from the judgment of the Family Court granting his wife, Catherine Castille Thompson, a judgment of separation on the grounds of constructive abandonment, denying him a separation on the grounds of abandonment, and cruel treatment, and awarding to his wife the sum of $250.00 per month as alimony pendente lite. Appellant also asserts the uneonstitutionality of C.C. Arts. 119, 120 and 148. We affirm.
We are not favored with oral or written reasons for judgment. However, by virtue of the judgment rendered it must be assumed that the trial judge declined to hold the parties mutually at fault, in which case the relief sought by both parties would have been rejected. Callahan v. Callais, 224 La. 901, 71 So.2d 320 (1954).
The record reflects that this couple was married on July 27, 1974, in the City of Baton Rouge, where their matrimonial domicile continued to remain. There are no children issue of this marriage; however, appellee had the custody of a young girl, age ten, and a young boy, age eight, issue of her previous marriage.
We will not detail here nor respond to the various allegations of fault asserted in these parties’ respective pleadings because a perusal of the testimony satisfies us that neither bore the burden of proving that the cruelties complained of were sufficient to warrant a judgment of separation in either instance. The only two witnesses to testify were the parties themselves. Appellee’s sister did testify but her testimony related solely to the issue of constructive abandonment on the part of appellant.
There are two significant dates, namely: September 19, 1975 and October 12, 1975.
In July of 1975 appellant applied to his employer for work in Florida. His request was accepted and he, his wife and her two children moved to and resided in an apartment in Florida. His reason for doing so was that the young daughter had qualified for a beauty contest at Disneyworld and he felt like it would be an opportunity for the family to go. Later, appellant complained that it \yas this sojourn in Florida that was one of the factors precipitating their difficulties. He claims that shortly after the conclusion of the beauty contest the children became insistent on returning “home” and that because of their insistence he suggested to appellee that she and the children return to Baton Rouge. Appellee’s version is that without justification appellant informed her that the marriage would not work, etc. His testimony in his regard better explains the circumstances:
“Q You admit that before Mrs. Thompson left, you told her to pack up and go back to Baton Rouge?
A Right.
Q You told her that the marriage wasn’t going to work out?
A I told her it don’t look like it was going to work out.
Q And for her to pack up and go back to Baton Rouge?
A Right.
*598 Q And that happened — -You told her that around four or five o’clock in the morning before you went to work one morning, is that right? Or
A No. I told it to her one day — one evening in the week and then I told her one morning.
Q About five-thirty one morning? O*
A When I was going to work. <1
Q When you were going to work? O*
A Yes, sir. <1
* * * * * *
Q And you gave her that check that morning about five-thirty and told her to pack up and go home and it wasn’t going to work out. Gf
A Right.
jfc :{: s}: sjc s|« sfc
A She didn’t leave until the next day. I asked her to leave.

Q What was her reaction when you told her to pack up and go home that morning? <y
A ‘I don’t want to.’ I said, ‘Well, are you sick?’ T don’t want to.’ ‘The kids say they want to go home.’ T don’t want to.’ That was that.
Q She didn’t want to go home? <y
A That was her answer. She said, T don’t want to.’ But still she went on and was packing when she said that. «,
Q And you told her it wasn’t going to work out and pack up and go home. .©
A I said it didn’t look like it was going to work; but we had already separated one time before over the same thing.
* * * * * *
Q And when you- — let me ask you. After you told her that you didn’t think it was going to work out, for her and the kids to go back to Baton Rouge, did she ever call you down in Florida? G?
A Every evening. I had sixty — She’s got the telephone bill. I had something like sixty-five dollars worth of telephone bills in Florida plus forty dollars worth of telephone bills in Baton Rouge. She called me every day and she called all of my children and everybody in the country.
Q She wanted you to try to come back and try to work it out, didn’t she?
A There was no way for me to come back until — No. She didn’t say nothing about working it out. She just— All she would say is, T love you.’
Q She just called you to tell you she loved you.
A That’s right.”
Appellant’s testimony with respect to his reasons for insisting that his wife leave does not justify his doing so.
On or about September 20, 1975, the wife returned to Baton rouge and to the matrimonial domicile. She went to this residence rather than one she had acquired during her previous marriage because the latter was occupied and not available to her.
We now turn to the events surrounding October 12, 1975, on this occasion plaintiff had concluded his work in Florida and returned unannounced to Baton Rouge. He went to the matrimonial domicile occupied by his wife and the children. When asked what his intentions were he explained that he was tired, wanted a bath, and some sleep. Appellee explained to him that if he persisted in remaining at the home she and the children would have to leave. Appellant then left and went to a camp he owned at False River. Appellant contends that his wife’s conduct on this occasion constituted abandonment on her part because she refused to remain in the same house with him.
Appellee’s version is that when her husband arrived, she asked him what his intentions were with respect to their marriage and was told that it “would not work” and “could not work” and that appellant had not changed his position. It was for this reason, appellee states, that she could not remain in the home under these circumstances and that it was for this reason only that she was going to leave the matrimonial domicile. The evidence is clear that appellant’s appearance at his home on this occasion was not for the purpose of a reconcilia *599 tion or to pursue any efforts that would tend to resolve their differences.
Appellant confirmed this intention in his response to certain questions:
“Q You didn’t intend to try to make the marriage work. You wanted to stay in your house because it was your house, isn’t that right?
A Right. I didn’t come to make that marriage work because I think I had tried and tried and tried to make it work.
Q I see. So you came home and you came to Baton Rouge and you went to the house because it was your house, but you didn’t go there to try to make the marriage work. That’s what you said.
A That’s right. That’s right. I went there—

THE COURT: How about right now? She indicates she would go back with you?
A Heck no. I wouldn’t go with her. I am busted. I am completely wiped out.
Q When you came home from Florida you wouldn’t go back with her, would you?
A No. I pretty well knew where I stood when I come home from Florida.”
We fully realize that it is almost an impossible task to reflect in an opinion such as this the true feelings of the parties and the many factors that contribute to marital discord. We do not for one minute say that in appellant’s own mind he did not feel that he was warranted in pursuing the course of conduct that he did in having his wife leave the apartment in Florida or his refusal to reside with her on his return to Baton Rouge. He explains that one of his major problems was family finances. Yet, there is no reasonable evidence in the record that supports a conclusion that appellee committed acts of financial irresponsibility contrary to her marital obligations.
Appellant urges the constitutional infirmity of C.C. Arts. 119,[1] 120[2] and 148[3] in the light of Article 1, Sec. 3 of the Louisiana Constitution of 1974.[4] Basically, he contends that subsequent legislation, Married Women’s Emancipation Act (Act 283 of 1928, R.S. 9:101, et seq.), and our Constitution of 1974 have rendered the subject articles obsolete.
With respect to C.C. Art. 148, our Supreme Court in a recent decision in Wi7-liams v. Williams, 331 So.2d 438 (La.1976) expressed itself contrary to the views espoused by appellant. In Williams, the article was tested for reasonableness and found to be constitutionally firm. The court stated that it was not unreasonable for the legislature “to afford her (the wife) special protection during the final (and often non amicable) stage of the community’s existence” when her lack of control over the assets of the community under our system of community of acquets and gains is considered.
We fail to see how C.C. Art. 119 can be considered discriminatory. To the contrary, its requirements of mutual support *600 and assistance appear to be the very essence of fairness.
The facts in the instant case do not warrant a discussion of the alleged constitutionality of C.C. Art. 120.
Lastly, we turn to the award of $250.00 per month to the plaintiff as alimony pendente lite under C.C. Art. 148. We assume that appellant’s objection is two fold, namely: that any award was made; and (2) that the amount is excessive. With respect to the first objection, we believe that we have answered the same in our response to the constitutional attack on the subject article. With respect to the second objection, we note that plaintiff has a net weekly take home pay of approximately $284.00. The only income of the wife is the sum of $200.00 per month which she receives from her former husband for the support of the two minor children of that marriage. While the wife listed numerous expenses ($575.00), some of which necessarily included these children, we do not find that the award of $250.00 per month by the trial judge is an abuse of the discretion accorded the trier of fact. The husband listed a house note of $245.00 per month, a piano payment of $30.00 per month and church contributions of $80.00 per month. This is the extent of the itemization of his expenses. Under these circumstances, we can not say that the award made by the trial judge is in error.
Accordingly, for the above reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. Art. 119. The husband and wife owe to each other mutually, fidelity, support and assistance.

. Art. 120. The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition.

. Art. 148. If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband.

.Sec. 3. No person shall be denied equal protection of the laws. No law shall discriminate against a person because of race or religion, ideas, beliefs or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.